MASSEY v SECRETARY OF STATE

Docket No. 112047. Decided May 26, 1998. On application by the plaintiffs for leave to appeal, the Supreme Court, in lieu of granting leave, affirmed the decision of the circuit court.

Prestine Massey and other voters in two legislative districts brought an action in Wayne Circuit Court against the Secretary of State and Taxpayers United for Term Limitations, challenging the validity of Const 1963, art 4, § 54, approved at the November 3, 1992, general election as Proposal B. The amendment limits the number of terms persons may be elected to the offices of state senator and state representative. The plaintiffs allege that the submission of Proposal B was defective in failing to include existing provisions of the constitution that would be altered or abrogated, and in failing to provide a statement of purpose that was a true and impartial statement of the purpose of the amendment as required by Const 1963, art 12, § 2. The plaintiffs sought an injunction to prevent operation of art 4, § 54 for the general election of 1998 and thereafter. The court, Michael F. Sapala, J., granted summary disposition for the defendants. The plaintiffs seek leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

Const 1963, art 4, § 54 is valid.

Const 1963, art 4, § 54 did not alter or abrogate art 4, § 7. It did not add, delete, or change the wording of art 4, § 7, nor render it wholly inoperative. To the contrary, all the qualifications of art 4, § 7 remain in effect. The ballot language relating to art 4, § 54 informed the voter that the purpose of the proposal was to limit the number of times a person could be elected to specified legislative office, exactly what art 4, § 54 does.

Affirmed.

*Robert A. Sedler, Otto J. Hetzel,* and *John E. Mogk, Jr.,* for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gary P. Gordon,* and *Katherine C. Galvin,* Assistant Attorneys General, for the defendant.

*Mika, Meyers, Beckett & Jones, P.L.C.* (by *Michael A. Zagaroli* and *Daniel C. Brubaker*), and *Stephen J. Safranek*, for the intervening defendant.

PER CURIAM. At the general election on November 3, 1992, the voters approved Proposal B. A part of that proposal, Const 1963, art 4, § 54, limits the number of terms persons may be elected to the office of state senator and the office of state representative. Plaintiffs filed this action, arguing that the submission of Proposal B to the voters was defective in two particulars. Plaintiffs sought an injunctive order preventing operation of art 4, § 54 for the general election of 1998 and thereafter. The circuit court granted summary disposition against plaintiffs, finding their claims without merit. Plaintiffs have filed a claim of appeal from that judgment in the Court of Appeals and have sought leave to appeal in this Court before decision by the Court of Appeals. We grant plaintiffs' request that we decide the case before decision by the Court of Appeals, but, in lieu of granting leave to appeal,[1] we affirm the decision of the circuit court upholding the validity of Const 1963, art 4, § 54.[2]

### HISTORY OF THE CASE

At the general election on November 3, 1992, the voters approved Proposal B, adding four new sections to the Constitution of 1963.[3] On March 9, 1998, plain-

---

[1] See MCR 7.303(F)(1).

[2] In *Citizens for Legislative Choice v Secretary of State*, 144 F3d 916 (CA 6, 1998), the Court affirmed a federal district court decision upholding Const 1963, art 4, § 54 against a claim that the provision violated rights guaranteed by the First and Fourteenth Amendments of the United States Constitution. US Const, Ams I and XIV.

[3] These are found at art 2, § 10, dealing with limitations on terms of office of members of the United States House of Representatives and

tiffs filed suit in the Wayne Circuit Court. Plaintiffs allege that they are voters in two legislative districts who would like to vote for the reelection of their current representatives but that those representatives are ineligible to run for reelection under Const 1963, art 4, § 54.[4] Plaintiffs allege that art 4, § 54 is void because the submission of Proposal B at the 1992 election failed to comply in two ways with the requirements for submission of petition-initiated proposals set by Const 1963, art 12, § 2.[5] Count I of the

---

United States Senate from Michigan; art 4, § 54, dealing with limitations on terms of office of state legislators; art 5, § 30, dealing with limitations on terms of executive officers; and art 12, § 4, dealing with severability of the other three provisions. This case involves a direct challenge only to art 4, § 54. Specifically, we do not consider the effect of *U S Term Limits, Inc v Thornton,* 514 US 779; 115 S Ct 1842; 131 L Ed 2d 881 (1995), on art 2, § 10.

[4] The section provides:

No person shall be elected to the office of state representative more than three times. No person shall be elected to the office of state senate more than two times. Any person appointed or elected to fill a vacancy in the house of representatives or the state senate for a period greater than one half of a term of such office, shall be considered to have been elected to serve one time in that office for purposes of this section. This limitation on the number of times a person shall be elected to office shall apply to terms of office beginning on or after January 1, 1993.

This section shall be self-executing. Legislation may be enacted to facilitate operation of this section, but no law shall limit or restrict the application of this section. If any part of this section is held to be invalid or unconstitutional, the remaining parts of this section shall not be affected but will remain in full force and effect.

[5] This section provides:

Amendments may be proposed to this constitution by petition of the registered electors of this state. Every petition shall include the full text of the proposed amendment, and be signed by registered electors of the state equal in number to at least 10 percent of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected. Such petitions shall be filed with the person authorized by law to receive the same at least 120 days before the election at which the proposed amend-

complaint alleged failure to comply with the require-
ment of the second paragraph of art 12, § 2, requiring
that the published version of the proposal include
"existing provisions of the constitution which would
be altered or abrogated . . . ." Count II alleged that
the statement of purpose (also called the ballot lan-
guage) failed to comply with the requirement of the
third paragraph of art 12, § 2 that the statement be "a
true and impartial statement of the purpose of the
amendment in such language as shall create no
prejudice for or against the proposed amendment."
Plaintiffs sought temporary and permanent injunctive

ment is to be voted upon. Any such petition shall be in the form,
and shall be signed and circulated in such manner, as prescribed by
law. The person authorized by law to receive such petition shall
upon its receipt determine, as provided by law, the validity and suf-
ficiency of the signatures on the petition, and make an official
announcement thereof at least 60 days prior to the election at
which the proposed amendment is to be voted upon.

Any amendment proposed by such petition shall be submitted,
not less than 120 days after it was filed, to the electors at the next
general election. Such proposed amendment, existing provisions of
the constitution which would be altered or abrogated thereby, and
the question as it shall appear on the ballot shall be published in
full as provided by law. Copies of such publication shall be posted
in each polling place and furnished to news media as provided by
law.

The ballot to be used in such election shall contain a statement
of the purpose of the proposed amendment, expressed in not more
than 100 words, exclusive of caption. Such statement of purpose
and caption shall be prepared by the person authorized by law, and
shall consist of a true and impartial statement of the purpose of the
amendment in such language as shall create no prejudice for or
against the proposed amendment.

If the proposed amendment is approved by a majority of the
electors voting on the question, it shall become part of the constitu-
tion, and shall abrogate or amend existing provisions of the consti-
tution at the end of 45 days after the date of the election at which
it was approved. If two or more amendments approved by the elec-
tors at the same election conflict, that amendment receiving the
highest affirmative vote shall prevail.

orders that defendant Secretary of State not enforce art 4, § 54.

The parties[6] submitted the matter to the Wayne Circuit Court on countering motions for summary disposition argued on April 15, 1998.[7] Only two days later, April 17, 1998, the circuit judge issued a thorough, scholarly opinion and granted summary disposition to defendant.

Plaintiffs filed a claim of appeal with the Court of Appeals[8] and an application for leave to appeal to this Court before decision by the Court of Appeals.[9]

### ANALYSIS

#### GENERAL CONSIDERATIONS

This Court has long expressed a preference that challenges such as the one brought in the present case be filed sufficiently before an election, in this case the election of 1992, for the courts to have time to resolve the dispute and, if necessary, to direct election officials to take corrective action or to enjoin submission of the proposal to the electorate. *Carman v Secretary of State*, 384 Mich 443, 449; 185 NW2d 1 (1971); *City of Jackson v Comm'r of Revenue*, 316 Mich 694, 714-716; 26 NW2d 569 (1947); *Attorney*

---

[6] The circuit court permitted Taxpayers United for Term Limitations, the organization of persons who circulated the petition to put Proposal B on the ballot, to intervene as a defendant.

[7] The parties agreed that there were no disputed issues of fact. Plaintiffs relied on their motion for a temporary injunction as their motion for summary disposition.

[8] Docket No. 211116.

[9] Plaintiffs have also filed a motion for immediate consideration, which we grant.

*General ex rel Miller v Miller*, 266 Mich 127, 133-134; 253 NW 241 (1934).[10]

Because of the respect commanded by the vote of the people, postelection challenges bear a heavy burden of persuasion. As summarized in *Carman*, "the Courts should look at procedural errors of submission through different eyeglasses, once the electors have voted affirmatively." 384 Mich 455. We stated in *City of Jackson, supra* at 718:

> "In reaching the decision, the court must necessarily have in mind the universal rule that, whenever a constitutional amendment is attacked as not constitutionally adopted, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold; that every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt." [Quoted from *Bd of Liquidation of State Debt of Louisiana v Whitney-Central Trust & Savings Bank*, 168 La 560, 564; 122 So 850 (1929) (citations omitted).]

With these considerations in mind, we turn to the allegations of plaintiffs.

"ALTERED OR ABROGATED" CLAUSE

The second paragraph of Const 1963, art 12, § 2 provides, in part,[11] that the proposal and any "existing provisions of the constitution which would be altered or abrogated thereby . . . shall be published in full as required by law."[12] The publication of Proposal B

---

[10] The issues raised in the instant case could have been raised before the election through the process established by MCL 168.479; MSA 6.1479.

[11] The entire provision is quoted in footnote 5.

[12] As noted in *Ferency v Secretary of State*, 409 Mich 569, 592; 297 NW2d 544 (1980), "The Constitution places the burden of publishing this information on the state, as a means of informing the voters." See MCL

included no existing provision of the constitution. Plaintiffs argue that Proposal B had the effect of altering Const 1963, art 4, § 7.[13] Plaintiffs argue, in effect, that art 4, § 7 sets forth the exclusive list of qualifications of legislators. By creating a new condition for election, art 4, § 54 alters art 4, § 7 by making § 7 no longer an exclusive list of qualifications.

Plaintiffs' argument fails both on its premise that art 4, § 7 is an exclusive list of qualifications and on its premise that adding an additional qualification elsewhere in the constitution would alter art 4, § 7 within the meaning of the alter or abrogate clause of art 12, § 2, ¶ 2.

Plaintiffs' implicit argument that art 4, § 54 alters art 4, § 7 by depriving it of its exclusivity fails because art 4, § 7 does not purport to be the exclusive list of qualifications for legislative office. The language of art 4, § 7 does not state it is the exclusive list of candidate qualifications. Moreover, the very next provision of the constitution, art 4, § 8,[14] states

---

168.32; MSA 6.1032 regarding certain duties of the Director of Elections, and MCL 168.474-168.486; MSA 6.1474-6.1486 regarding certain duties of the Board of State Canvassers.

[13] The section provides:

Each senator and representative must be a citizen of the United States, at least 21 years of age, and an elector of the district he represents. The removal of his domicile from the district shall be deemed a vacation of the office. No person who has been convicted of subversion or who has within the preceding 20 years been convicted of a felony involving a breach of public trust shall be eligible for either house of the legislature.

[14] No person holding any office, employment or position under the United States or this state or a political subdivision thereof, except notaries public and members of the armed forces reserve, may be a member of either house of the legislature.

what can only be viewed as a qualification for legislative office in addition to those stated in art 4, § 7.

Plaintiffs also miss the point of the line of cases in which this Court has defined the meaning of "altered or abrogated" in Const 1963, art 12, § 2, and its predecessor, Const 1908, art 17, § 3.[15] *Pontiac School Dist v Pontiac,* 262 Mich 338; 247 NW 474 (1933), *City of Jackson, supra, Graham v Miller,* 348 Mich 684; 84 NW2d 46 (1957), and *Ferency v Secretary of State,* 409 Mich 569; 297 NW2d 544 (1980). The purpose of the provision is to definitely advise the elector "as to the purpose of the proposed amendment and what provision of the constitutional law it modified or supplanted." *Pontiac School Dist, supra* at 344:

> But the ordinary elector, not being a constitutional lawyer, would be confused rather than helped by a publication of all the other constitutional provisions which were or might be directly or only remotely, and possibly only contingently, affected by the proposed amendment. We think the requirement in substance is this: That in case a proposed constitutional provision amends or replaces ("alters or abrogates") a specific provision of the Constitution, that such provision should be published along with the proposed amendment; that other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with the amending provision, need not necessarily be published.

When the test set out above did not halt arguments that a proposal "altered or abrogated" an existing pro-

---

[15]     All proposed amendments to the constitution and other questions to be submitted to the electors shall be published in full, with any existing provisions of the constitution which would be altered or abrogated thereby, and a copy thereof shall be posted in each polling place.

vision by implication, this Court restated the test in *Ferency*:[16]

> An existing constitutional provision is altered or abrogated if the proposed amendment would add to, delete from, or change the existing wording of the provision, or would render it wholly inoperative. [409 Mich 597.]

The phrase "the existing wording" should be taken literally. An example of a proposal which would alter an existing constitutional provision by adding to its existing wording is found in *Carman, supra*, in which the proposal added a new paragraph to an existing constitutional provision, Const 1963, art 8, § 2.

Applying the *Ferency* test to this case is, as it should be, simple. Article 4, § 54 does not add, delete, or change the wording of art 4, § 7. It does not render it wholly inoperative. Quite the contrary, all the qualifications of art 4, § 7 remain in effect. The circuit court correctly dismissed this claim.

### STATEMENT OF PURPOSE

The third paragraph of art 12, § 2 provides:

> The ballot to be used in such election shall contain a statement of the purpose of the proposed amendment, expressed in not more than 100 words, exclusive of caption. Such statement of purpose and caption shall be prepared by the person authorized by law, and shall consist of a true

---

[16] *Ferency* defined the meaning of "alter or abrogate" in MCL 168.482; MSA 6.1482, pertaining to circulation of petitions. That statute provides, in part, "[i]f the proposal would alter or abrogate any existing provision of the constitution, the petition should so state and the provisions to be altered or abrogated shall be inserted . . . ." *Ferency* interpreted the words "in the context of the constitutional publishing requirement." 409 Mich 593. The definition quoted in the text applies both to the statutory and constitutional usage of "alter or abrogate."

and impartial statement of the purpose of the amendment in such language as shall create no prejudice for or against the proposed amendment.

At a public meeting on September 3, 1992, the Board of State Canvassers adopted the following statement of purpose for Proposal B:

A PROPOSAL TO RESTRICT/LIMIT THE NUMBER OF TIMES A PERSON CAN BE ELECTED TO CONGRESSIONAL, STATE EXECUTIVE AND STATE LEGISLATIVE OFFICES.

The proposed constitutional amendment would:

Restrict the number of times a person could be elected to certain offices as described below:

1) U.S. Senator: two times in any 24-year period.

2) U.S. Representative: three times in any 12-year period.

3) Governor, Lieutenant Governor, Secretary of State or Attorney General: two times per office.

4) State Senator: two times.

5) State Representative: three times.

Office terms beginning on or after January 1, 1993 would count toward the term restrictions. A person appointed or elected to an office vacancy for more than ½ of a term would be considered elected once in that office.

Should this proposal be adopted?

No appeal was taken from the board's action under MCL 168.479; MSA 6.1479.

Plaintiffs argue that this statement of purpose has two deficiencies: first, it should have explicitly stated that the limitations on the terms for state legislative office were lifetime limits, and, second, it should have stated that the limits on the federal offices were severable from those on state offices.

We see no merit in plaintiffs' argument that the failure to state explicitly that the state term limits were lifetime somehow prejudiced the voters in favor of

the proposal. In reaching this conclusion, we agree with the circuit court's observation that . plaintiffs made no offer to show that there was any confusion over the intent of the proposal to impose lifetime limits on election to the specified state offices. A request to grant relief despite such a failure turns on its head the standard rule repeated in *City of Jackson, supra,* that "every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt." 316 Mich 718.

We also agree with the circuit court that, avoiding any arcane or obscure interpretations,[17] the available indicia suggest that the voters would have known the state limits were lifetime. As the circuit court stated:

> [R]eading the Statement as a whole, this court notes that the introductory sentence expressly states the purpose is to "[r]estrict the number of times a person can be elected." The remainder of the Statement of Purpose details how many times a person can be elected. Without some qualifying language, a reasonable conclusion of a voter could have been that a person could serve the number of terms specified and no more.

In other words, there is no reason to suspect that a person reading the introductory sentence would have assumed that the restriction was somehow qualified

---

[17] We see no reason that the ballot language, like the language of the constitution, should not be read according to the "common understanding" of "the great mass of the people" who voted on it, avoiding "any dark or abtruse meaning in the words employed . . . ." 1 Cooley, Constitutional Limitations (8th ed), p 143, quoted with approval by this Court in such cases as *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971), and *Durant v Michigan,* 456 Mich 175, 192; 566 NW2d 272 (1997).

when no qualification was stated. This point is driven home when the statement indicates that the restriction on terms for the specified federal offices lasts only a certain number of years. As stated by the trial judge, the fact that state legislative "term limits were otherwise unqualified would also lead a reasonable voter to conclude that . . . a State legislator could only serve a certain number of terms and no more."

Lastly, we observe, as did the circuit court, that the term limit with which the average voter is most familiar is the limit on the office of President of the United States. That is a lifetime limit.[18]

We do not see any potential that the voters might have been misled that the limits set on holding the specified state offices were temporary, rather than absolute.

This leaves only plaintiffs' contention that the statement of purpose should have included a summary of the severability provision. This contention reminds us of the statement in *Pontiac School Dist*, 262 Mich 344, quoted above in the discussion of the publication requirement that "the ordinary elector, not being a constitutional lawyer, would be confused rather than helped" by a statement on such a technical matter as severability. The ballot language must, after all, "consist of a true and impartial statement of the purpose of the amendment" in not more than one hundred words. Art 12, § 2, ¶ 3. The ballot language relating to

---

[18] US Const, Am XXII, provides, in part: "No person shall be elected to the office of the President more than twice . . . ." The language of Const 1963, art 4, § 54 begins, "No person shall be elected to the office of state representative more than three times. No person shall be elected to the office of state senate more than two times." The failure of the federal amendment to use the word "lifetime" has caused no confusion.

art 4, § 54, informed the voter that the purpose of the proposal was to limit the number of times a person could be elected to specified legislative offices. That is exactly what art 4, § 54 does.

We affirm the decision of the Wayne Circuit Court.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred.