686 N.W.2d 287 (2004)
262 Mich.App. 395
COALITION TO DEFEND AFFIRMATIVE ACTION & INTEGRATION, and Fight for Equality by any Means Necessary (BAMN), United for Equality and Affirmative Action, Michigan Legislative Black Caucus, and AFSCME Local 207 and 312, Plaintiffs-Appellees-Cross Appellants,
v.
BOARD OF STATE CANVASSERS, Defendant-Appellant-Cross Appellee.
Citizens for United Michigan, Plaintiff-Appellee-Cross Appellant,
v.
Board of State Canvassers, Defendant-Appellant-Cross Appellee.
Docket Nos. 254652, 254653.
Court of Appeals of Michigan.
Submitted June 8, 2004, at Lansing.
Decided June 11, 2004, at 9:00 a.m.
Released for Publication September 1, 2004.
*288 Scheff & Washington, P.C. (by George B. Washington), Detroit, for Coalition to Defend Affirmative Action & Integration, and Fight for Equality by Any Means Necessary; United for Equality and Affirmative Action; Michigan Legislative Black Caucus; and AFSCME Local 207 and 312.
Miller Canfield Paddock & Stone, PLC (by Michael J. Hodge, Saul A. Green, and Robert A. Lefevre), and Dykema Gossett (by Richard D. McLellan, William J. Perrone, and Kristine N. Tuma) Lansing, for Citizens for United Michigan.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, and *289 Heather S. Meingast, Assistant Attorney General, for Board of State Canvassers.
Fett Roumel, PC (by James K. Fett), and Glen N. Lenhoff, Pinckney, Flint, for Michigan Civil Rights Initiative.
Before: FITZGERALD, P.J., and BANDSTRA and SCHUETTE, JJ.
PER CURIAM.
In these consolidated cases, defendant Board of State Canvassers appeals as of right from the opinion and order granting plaintiffs' complaint for mandamus and ordering the board to rescind its approval of the form of a petition "to amend the constitution."[1] In both cases, plaintiffs have filed cross-appeals. In a previous order, this Court granted the proponent of the petition, Michigan Civil Rights Initiative (MCRI), leave to appear as amicus curiae. We reverse in part, affirm in part, and remand the matter to the board for further proceedings consistent with this opinion.
In December 2003, MCRI sought the board's approval as to form of a petition "to amend the Michigan constitution by adding a new § 25 to Article 1." The proposed amendment read:
ARTICLE 1, SECTION 25:
Civil Rights.
(1) The University of Michigan, Michigan State University, Wayne State University, and any other public college or university, community college, or school district shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education or public contracting.
(2) The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.
(3) For the purposes of this section "state" includes, but is not necessarily limited to, the state itself, any city, county, any public college, university, or community college, school district, or other political subdivision or governmental instrumentality of or within the State of Michigan not included in sub-section 1.
(4) This section does not prohibit action that must be taken to establish or maintain eligibility for any federal program, if ineligibility would result in a loss of federal funds to the state.
(5) Nothing in this section shall be interpreted as prohibiting bona fide qualifications based on sex that are reasonably necessary to the normal operation of public employment, public education, or public contracting.
(6) The remedies available for violations of this section shall be the same, regardless of the injured party's race, sex, color, ethnicity, or national origin, as are otherwise available for violations of Michigan's anti-discrimination law.
(7) This section shall be self-executing. If any part or parts of this section are found to be in conflict with the United States Constitution or federal law, the section shall be implemented to the maximum extent that the United States Constitution and federal law permit. Any provision held invalid shall be severable from the remaining portions of this section.

*290 (8) This section applies only to action taken after the effective date of this section.
(9) This section does not invalidate any court order or consent decree that is in force as of the effective date of this section.
On the signature side, the petition included a summary and description of the proposal that referred the reader to the reverse side for the actual text of the proposed amendment. On the reverse side, the petition contained the following language preceding the text of the proposed amendment:
A PROPOSAL TO AMEND THE CONSTITUTION TO PROHIBIT THE UNIVERSITY OF MICHIGAN AND OTHER STATE UNIVERSITIES, THE STATE, AND ALL OTHER STATE ENTITIES FROM DISCRIMINATING OR GRANTING PREFERENTIAL TREATMENT BASED ON RACE, SEX, COLOR, ETHNICITY, OR NATIONAL ORIGIN.
THE PROPOSAL WOULD AMEND THE STATE CONSTITUTION BY ADDING A SECTION 25 TO ARTICLE I[sic].
On December 11, 2003, the board conducted a public hearing for the purpose of determining whether the petition met the requirements of the Michigan Election Law, MCL 168.1 et seq. Plaintiffs contended at that hearing that the proposed language of the petition violated MCL 168.482(3), which requires that a petition state whether it would alter or abrogate an existing provision of the Constitution and include the text of the constitutional provision that would be changed or eliminated by the proposal. Plaintiffs argued in part that the proposed amendment was an attempt to change Const. 1963, art. 1, § 2, the text of which was not included on the petition. Plaintiffs also objected to the inclusion, content, and placement of the summaries of the proposal on the petition. Following the hearing, the board voted to approve the petition "as to form, with the understanding that the approval does not extend to the substance of the proposal,... [or] to the summary of the proposal which appears on the signature side of the petition or ... to the manner in which the proposal is affixed on the petition."
Plaintiffs in Docket No. 254652 immediately filed a complaint for mandamus in Ingham Circuit Court. Plaintiff in Docket No. 254653 filed a complaint for mandamus and a request for declaratory relief two weeks later. The parties agreed to having the suits consolidated and the matter proceeded to oral argument.
In a written opinion and order, the circuit court concluded that the petition failed to conform to MCL 168.482(3) because "the practical effect of the new section is to inject five new words into Article 1, § 2, `or grant preferential treatment to.'" The court found prior Michigan Supreme Court precedent distinguishable because the Court had never "addressed a situation quite like that which is present before this Court, where a group has proposed an amendment which creates a `new' section to the Michigan Constitution, yet boldly regurgitates language of an existing section, with moderate modifications." Accordingly, the court found that the members of the board "failed to perform their duty in accordance with the law in approving the form of MCRI's petition when it was in direct violation of MCL 168.482(3)." For this reason, the court granted the complaints for mandamus and ordered the board to rescind its approval of the petition. However, the court refused to find that the summaries of the amendment violated the statutory requirements and otherwise denied the relief plaintiffs requested.
*291 The statute at issue, MCL 168.482(3), states in relevant part: "If the proposal would alter or abrogate an existing provision of the constitution, the petition shall so state and the provisions to be altered or abrogated shall be inserted, preceded by the words: `Provisions of existing constitution altered or abrogated by the proposal if adopted.'" See also Const. 1963, art. 12, § 2. Our Supreme Court has determined that the purpose of the publication requirement in MCL 168.482(3) "is to definitely advise the elector `as to the purpose of the proposed amendment and what provision of the constitutional law it modified or supplanted.'" Massey v. Secretary of State, 457 Mich. 410, 417, 579 N.W.2d 862 (1998), quoting Pontiac School Dist. v. Pontiac, 262 Mich. 338, 344, 247 N.W. 474 (1933). Accordingly, the Court held:
"[T]he requirement in substance is this: That in case a proposed constitutional provision amends or replaces (`alters or abrogates') a specific provision of the Constitution, that such provision should be published along with the proposed amendment; that other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with the amending provision, need not necessarily be published." [Massey, supra at 417, 579 N.W.2d 862, quoting Pontiac School Dist, supra at 344, 247 N.W. 474.]
In Massey, the Supreme Court noted that when the decision in Pontiac School Dist., supra, "did not halt arguments that a proposal `altered or abrogated' an existing provision by implication," it "restated the test in Ferency [v. Secretary of State, 409 Mich. 569, 597, 297 N.W.2d 544 (1980)]: `An existing constitutional provision is altered or abrogated if the proposed amendment would add to, delete from, or change the existing wording of the provision, or would render it wholly inoperative.'" Id. at 417-418, 579 N.W.2d 862. The Court added that "[t]he phrase `the existing wording' should be taken literally." Id. This holding is dispositive of plaintiffs' arguments.
In this case, the proposed amendment does not "add to, delete from, or change the existing wording of" Article 1, § 2, because the current language of that provision is unaffected by the amendment and the amendment does not render it "wholly inoperative." Massey, supra at 418, 579 N.W.2d 862. Const. 1963, Art. 1, § 2 states:
No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation.
Plaintiffs' arguments in regard to the Equal Protection Clause are not based on the language of the Constitution, but on subsequent court decisions interpreting and applying the state and federal equal protection clauses. Those decisions are not part of the Michigan Constitution's "existing wording." Moreover, the Equal Protection Clause would not be rendered a nullity by the proposed amendment because the provision has applications well beyond the scope of affirmative action programs. Consequently, we are compelled to find, in light of the holding of Massey, supra, that plaintiffs' argument that the Equal Protection Clause is altered or abrogated by the proposed amendment is meritless.
Subsection 2 of the proposed amendment does contain language that is somewhat similar to the second clause of Article 1, § 2, which prohibits discrimination by any person "because of religion, race, color *292 or national origin." Although the antidiscrimination clause of Article 1, § 2 does not expressly refer to the state, our Supreme Court has held that the clause is self-executing with respect to state action. Civil Rights Dep't ex rel. Forton v. Waterford Twp. Dep't of Parks & Recreation, 425 Mich. 173, 186, 387 N.W.2d 821 (1986). Therefore, as the circuit court recognized, there is some overlap with regard to the scope of the proposed amendment and the antidiscrimination clause in Article 1, § 2. For this reason, the circuit court concluded that the proposal constituted an addition to the antidiscrimination clause, as it applies to the state, because it alters the scope of the provision by utilizing similar language to prohibit discrimination by the state in the form of preferential treatment.
But in Massey, supra at 417, 579 N.W.2d 862, the Supreme Court reaffirmed the rule that
the ordinary elector, not being a constitutional lawyer, would be confused rather than helped by a publication of all the other constitutional provisions which were or might be directly or only remotely, and possibly only contingently, affected by the proposed amendment. [Quoting Pontiac School Dist., supra at 344, 247 N.W. 474 (emphasis added).]
Thus, under the holdings of Massey, supra, and Pontiac School Dist., supra, even if the interpretation of the antidiscrimination clause is directly affected by the proposed amendment, the language of that provision need not be set forth on the face of the petition where the proposal itself does not change, replace, or eliminate the existing language of Article 1, § 2 and does not render that provision "wholly inoperative." Id. at 418, 247 N.W. 474. In the absence of such a change, publication is not required because Article 1, § 2 "will remain `operative, though possibly [it] ... may need thereafter to be construed in conjunction with the amending provision[s].'" Ferency, supra at 597, 297 N.W.2d 544, quoting Pontiac School Dist., supra at 344, 247 N.W. 474; see also Massey, supra at 417, 579 N.W.2d 862.
Plaintiffs contend that such an interpretation is unwarranted where a constitutional amendment is proposed that substantially incorporates the language of an existing provision, but is presented as a separately numbered constitutional provision without stating that the proposal is one that "alters or abrogates" the existing provision. However, the only words that the proposed amendment and Article 1, § 2 have in common is some form of the word "discriminate" and the words "race," "color," and "national origin." The fact that the proposed amendment uses some of the same terms found in Article 1, § 2 does not compel the conclusion that the proposal alters, amends, or abrogates the existing wording of that provision. Although plaintiffs argue that the petition is misleading because it does not inform electors that the Constitution already has a provision prohibiting discrimination, there is simply no requirement in the statute that similar existing constitutional provisions, or those that relate to the same subject matter, must be published on a petition.
On cross-appeal, plaintiffs argue that the circuit court abused its discretion when it failed to find that the Board of State Canvassers breached a clear legal duty to reject a petition that placed the text of the proposed amendment on the back of the petition, rather than on the front, and inserted a misleading summary on the front of the petition. Plaintiffs also objected to the "introduction" to the text of the proposed amendment included on the reverse side of the petition. We do not find that the circuit court erred in its interpretation of the statutory requirements or abused its *293 discretion in refusing to invalidate the petition on the basis of its format.
Neither MCL 168.482 nor MCL 168.544d requires that the text of the proposed amendment appear on the signature side of the petition. Under MCL 168.31(1)(a), the Secretary of State is expressly authorized to promulgate rules and issue instructions for the conduct of elections, and MCL 168.544d states that a petition "shall be on a form prescribed by the secretary of state, which form shall be substantially as provided in sections 482, 544a, or 544c." The Secretary of State's instructions issued pursuant to this authority permit the text of the proposed amendment to appear on the reverse side of the petition when there is insufficient space to include it on the signature side of the petition. They state: "If there is not sufficient space at the top of the signature side of the petition" to print the introduction and text of the amendment, "the introduction shall be followed by a brief synopsis of the proposal and reference shall be made to the reverse side of the sheet for the full text of the proposal. The full text of the constitutional amendment shall appear on the reverse side of the petition sheet after an introduction...." Secretary of State Memorandum Instruction, entitled "Initiation and Referendum Petition; Prescribed Format," dated October 17, 2003. The instructions also provide for "an introduction which specifies the provision or provisions of the State Constitution which the proposal is designed to alter, eliminate or create." Id. The instructions are silent with regard to whether any additional information may be included in the introduction.
We find that the petition substantially complied with these instructions. It is well established by both statute and case law that petitions need only substantially conform to the statutory requirements. MCL 168.544d (petitions shall be on forms that are "substantially as provided in sections 482 ..."); see also Charter Twp. of Bloomfield v. Oakland Co. Clerk, 253 Mich.App. 1, 22-23, 654 N.W.2d 610 (2002). In Newsome v. Bd. of State Canvassers, 69 Mich.App. 725, 729, 245 N.W.2d 374 (1976), this Court held that "[c]onstitutional and statutory initiative and referendum provisions should be liberally construed to effectuate their purposes, to facilitate rather than hamper the exercise by the people of these reserved rights." Id., citing Kuhn v. Dep't of Treasury, 384 Mich. 378, 183 N.W.2d 796 (1971). In Settles v. Detroit City Clerk, 169 Mich.App. 797, 802-803, 427 N.W.2d 188 (1988), this Court reaffirmed the general rule that "all doubts as to technical deficiencies or failure to comply with the exact letter of procedural requirements in petitions ... are resolved in favor of permitting the people to vote and express a choice on any proposal subject to election." Thus, even if the additional language in the "introduction" on the back of the petition could be considered a defect, we do not find it a fatal one. However, we limit our decision in regard to this issue to the facts of this case and discourage prospective drafters from including extraneous language in future petitions. In addition, we find that there is simply no merit to plaintiffs' contention that the language is "propaganda" or misleading. The summaries that plaintiffs find objectionable do not introduce any information that is not found in the language of the proposed amendment.
Finally, plaintiff Citizens for United Michigan (CFUM) argues that the circuit court erred in denying its request for a declaratory judgment in addition to mandamus relief because MCL 168.479 states that persons aggrieved by a decision of the Board of State Canvassers "may have such *294 determination reviewed by mandamus, certiorari, or other appropriate remedy." In view of the fact that we have determined that CFUM is not entitled to any relief, we decline to address this issue.
Reversed in part, affirmed in part, and remanded to the Board of State Canvassers for reinstatement of its approval of the form of the petition. Jurisdiction is not retained.
NOTES
[1] This appeal involves only the form of the petition and does not involve the substance or merits of the proposal. We therefore express no opinion regarding the substance or merits of the proposal.