ZAHRA, J.
Article 1, § 1 of Michigan’s Constitution states: “All political power is inherent in the people. Government is instituted for their equal benefit, security and protection.”[1] Within our Constitution, the people have allocated certain portions of their inherent powers to the branches of government. But the people have also reserved certain powers to themselves. Among these powers is the right to amend the Constitution by petition and popular vote.[2] This Court has consistently protected the right of the people to amend their Constitution in this way, while enforcing constitutional and statutory safeguards that the people placed on the exercise of that right. Nearly one century ago we recognized that
[o]f the right of qualified voters of the State to propose amendments to the Constitution by petition it may be said, generally, that it can be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises. But the right is to be exercised in a certain way and according to certain conditions, the limitations upon its exercise, like the reservation of the right itself, being found in the Constitution.[3]
These four cases, each involving a ballot proposal to amend the Michigan Constitution, ask us to decide whether the groups proposing the amendments prop *773 erly exercised their right to petition for constitutional amendments in compliance with the constitutional and statutory safeguards. Specifically, these cases present the issue whether the petitions for each proposal satisfied the requirement under Const 1963, art 12, § 2 and MCL 168.482(3) to republish any existing provisions of the Constitution that the proposed amendment would alter or abrogate. We reaffirm our prior caselaw holding that an existing provision is only altered when the amendment actually adds to, deletes from, or changes the wording of the provision. We further reaffirm that an amendment only abrogates an existing provision when it renders that provision wholly inoperative.
Applying the meanings of “alter” and “abrogate” to the cases at hand, we conclude that none of the ballot proposals alter an existing provision of the Constitution because none of them actually “add to, delete from, or change the existing wording of the provision----”[4] In addition, we conclude that only the ballot proposal relating to casinos in Citizens for More Michigan Jobs v Secretary of State (Docket No. 145754) abrogates an existing constitutional provision. Specifically, the casino amendment’s requirement that the casinos authorized by the amendment “shall be granted” liquor licenses by the state of Michigan renders wholly inoperative the “complete control of the alcoholic beverage traffic within this state” afforded to the Liquor Control Commission under an existing provision of the Constitution—Const 1963, art 4, § 40. Therefore, article 4, § 40 was required to be republished on the petition to inform the people of this abrogation.
Accordingly, in Protect Our Jobs v Board of State Canvassers (Docket No. 145748), we affirm the judgment of the Court of Appeals granting relief on the *774 complaint for mandamus. In Michigan Alliance for Prosperity v Board of State Canvassers (Docket No. 145753) and The People Should Decide v Board of State Canvassers (Docket No. 145755), we grant relief on the complaints for mandamus in part and direct the Secretary of State, the Board of State Canvassers, and the Director of Elections to proceed as necessary to place the proposed constitutional amendments on the November 2012 election ballot. We deny relief in all other respects. In Citizens for More Michigan Jobs, we dismiss the complaint for mandamus filed in the Court of Appeals and deny relief in all other respects.
I. BACKGROUND
In each of these four cases, ballot question committees have proposed amendments of the 1963 Michigan Constitution. Each committee has obtained the required number of valid signatures for placement on the ballot. But each proposal was challenged before the Board of State Canvassers. Although the proposed amendments pertain to different subjects, the common argument challenging the proposals that we are considering concerns whether any of the proposed amendments will alter or abrogate an existing constitutional provision that was not republished on the petition.[5]
In Protect Our Jobs, the ballot question committee Protect Our Jobs proposes an amendment that would enshrine certain collective-bargaining rights in the Con *775 stitution. Its petition was challenged at the Board of State Canvassers by Citizens Protecting Michigan’s Constitution. Because the board refused to certify the proposal for the ballot, Protect Our Jobs sought a writ of mandamus in the Court of Appeals. The Court of Appeals granted the writ of mandamus,[6] which led Citizens Protecting Michigan’s Constitution to file the instant application.
In Citizens for More Michigan Jobs, the ballot question committee Citizens for More Michigan Jobs proposes an amendment that would allow for the construction of eight new casinos in Michigan and designate their locations. Its petition was challenged by Protect MI Constitution, which sought a writ of mandamus in the Court of Appeals directing the Secretary of State to reject the ballot petition for a constitutional amendment. The Court of Appeals granted the requested relief.[7] This Court reversed the judgment of the Court of Appeals and vacated that Court’s order of mandamus, concluding that the constitutional amendment proposal is not an improper attempt to amend a statute and, thus, that the failure to publish an affected statute on the petition was not fatal to the proposal.[8] This Court ordered the Secretary of State, the Board of State Canvassers, and the Director of Elections to proceed.[9] Upon consideration by the board, Protect MI Constitution again challenged the proposal on alternative grounds, and the board refused to certify it for the ballot. Citizens for More Michigan Jobs filed a com *776 plaint for mandamus in the Court of Appeals and an emergency bypass application for leave to appeal in this Court.
In Michigan Alliance for Prosperity, the ballot question committee Michigan Alliance for Prosperity proposes an amendment that requires a ⅔ vote of the Legislature or a vote of the people before any tax increase can be approved. At the Board of State Canvassers, the proposal was challenged by Defend Michigan Democracy. The board refused to certify the proposal for the ballot, and Michigan Alliance for Prosperity filed a complaint for mandamus in the Court of Appeals and an emergency bypass application for leave to appeal in this Court.
Lastly, in The People Should Decide, the ballot question committee The People Should Decide proposes an amendment that would require a popular vote before any new international bridge could be constructed. The proposal was challenged at the Board of State Canvassers by Taxpayers Against Monopolies. The board refused to certify the proposal for the ballot, and The People Should Decide filed a complaint for mandamus in the Court of Appeals and an emergency bypass application for leave to appeal in this Court.
As stated, there is no dispute that all four proposals have garnered sufficient signatures to be placed on the ballot. All that is left to decide before the proposed constitutional amendments may be placed on the November general election ballot is whether the petitions themselves complied with the constitutional and statutory safeguards that had to be satisfied.
II. ANALYSIS
The challengers’ arguments largely center on Const 1963, art 12, § 2 and MCL 168.482. Article 12, § 2 of the *777 1963 Michigan Constitution, which governs amendment of the Constitution by petition and vote, provides:
Amendments may be proposed to this constitution by petition of the registered electors of this state. Every petition shall include the full text of the proposed amendment, and be signed by registered electors of the state equal in number to at least 10 percent of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected. Such petitions shall be filed with the person authorized by law to receive the same at least 120 days before the election at which the proposed amendment is to be voted upon. Any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law. The person authorized by law to receive such petition shall upon its receipt determine, as provided by law, the validity and sufficiency of the signatures on the petition, and make an official announcement thereof at least 60 days prior to the election at which the proposed amendment is to be voted upon.
Any amendment proposed by such petition shall be submitted, not less than 120 days after it was filed, to the electors at the next general election. Such proposed amendment, existing provisions of the constitution which would be altered or abrogated thereby, and the question as it shall appear on the ballot shall be published in full as provided by law. Copies of such publication shall be posted in each polling place and furnished to news media as provided by law.
The ballot to be used in such election shall contain a statement of the purpose of the proposed amendment, expressed in not more than 100 words, exclusive of caption. Such statement of purpose and caption shall be prepared by the person authorized by law, and shall consist of a true and impartial statement of the purpose of the amendment in such language as shall create no prejudice for or against the proposed amendment.
If the proposed amendment is approved by a majority of the electors voting on the question, it shall become part of the constitution, and shall abrogate or amend existing provisions of the constitution at the end of 45 days after the *778 date of the election at which it was approved. If two or more amendments approved by the electors at the same election conflict, that amendment receiving the highest affirmative vote shall prevail. [Emphasis added.]
The Legislature accepted the Constitution’s invitation to set forth publishing requirements for petitions. Relevant here, MCL 168.482(3) provides, in part:
If the proposal would alter or abrogate an existing provision of the constitution, the petition shall so state and the provisions to be altered or abrogated shall be inserted, preceded by the words:
“Provisions of existing constitution altered or abrogated by the proposal if adopted.” [Emphasis added.]
Const 1963, art 12, § 2 and MCL 168.482(3) together establish the requirements for publishing existing constitutional provisions. In Stand Up For Democracy v Board of State Canvassers,[10] this Court held that a petition must fully comply with mandatory statutory provisions that pertain to a petition’s requirements regarding form. MCL 168.482(3) uses the mandatory language “shall.” Accordingly, the principle articulated in Stand Up applies with equal force here and, thus, the petition supporters must fully comply with the requirement that the petition republish any existing constitutional provision that the proposed amendment, if adopted, would alter or abrogate.
This Court has addressed and consistently defined the language “altered or abrogated” in the context of both the Constitution and the statute. In School District of City of Pontiac v City of Pontiac,[11] we first addressed the meaning of “altered or abrogated” as *779 those terms appeared in an analogous provision of our 1908 Constitution.[12] The amendment at issue in Pontiac was designed to limit the amount of property taxes that the Legislature could assess.[13] Its opponents argued that the amendment altered or abrogated provisions of the Constitution that allowed the Legislature to levy taxes, but the proposed amendment had failed to republish those provisions.[14] This Court stated in response to these objections:
That in case a proposed constitutional provision amends or replaces (“alters or abrogates”) a specific provision of the Constitution, that such provision should be published along with the proposed amendment; that other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with the amending provision, need not necessarily be published.[15]
Accordingly, this Court held that because the challenged amendment created an entirely new section of the Constitution that left unaffected the wording of other provisions, no alteration or abrogation had occurred.[16]
In Ferency v Secretary of State,[17] this Court again addressed what it means to alter or abrogate an existing provision of the Constitution. In Ferency, we dealt with a challenge to the proposed “Tisch Amendment” that was intended to reduce property taxes, holding
that it is only where the proposed amendment would directly “alter or abrogate” (“amend or replace”) a specific provision or provisions of the existing Constitution that the provision or provisions must be noted on the petitions. An *780 existing constitutional provision is altered or abrogated if the proposed amendment would add to, delete from, or change the existing wording of the provision, or would render it wholly inoperative.[18]
This was a reasonable construction of those terms. In Ferency, we also cautioned that a more expansive definition of “alter or abrogate” would “chill” the ability of the people to amend their Constitution by potentially requiring the petition circulator to append the entire Constitution to ensure the validity of the petition to amend the Constitution.[19]
Finally, in Massey v Secretary of State,[20] this Court reaffirmed our holdings in Ferency and Pontiac. The Court clarified how to assess whether a proposed amendment would alter an existing provision, thereby requiring publication. We held that publication was required only when an amendment “would add to, delete from, or change the existing wording” of another constitutional provision and that the phrase “the existing wording” referred to the actual text of the provision.[21] In Massey, we concluded that the existing constitutional provision that set forth the qualifications for legislators was not altered by the addition of a new “term limits” constitutional provision, which established the additional qualification that a legislator not have served more than a specified number of prior terms in the Legislature, because the amendment did not change any words of any existing provision, nor did it cause an abrogation because the amendment rendered no provision wholly inoperative.[22]
*781 We conclude that the constructions offered in Massey, Ferency, and Pontiac are sound and reaffirm those cases and that reasoning. Thus, an existing provision is only “ ‘altered or abrogated if the proposed amendment would add to, delete from, or change the existing wording of the provision, or would render it wholly inoperative.’ ”[23] Furthermore, the phrase “the existing wording” refers to the actual text of an existing constitutional provision.[24]
Nonetheless, because the application of these terms continues to be a cause for debate, we take this opportunity to provide additional clarity. We must take care to enforce the constitutional and statutory petition safeguards that exist to ensure that voters are adequately informed as they exercise their right to amend the Constitution. In doing so, we have reasoned that “the ordinary elector, not being a constitutional lawyer, would be confused rather than helped by a publication of all the other constitutional provisions which were or might be directly or only remotely, and possibly only contingently, affected by the proposed amendment.”[25] We also must use caution not to usher in an interpretation by which we would “effectively require a petition circulator... to secure a judicial determination of which provisions of the existing Constitution the proposed amendment would ‘alter or abrogate.’ ”[26] With these principles in focus, we turn to the specific terms “alter” and “abrogate.”
A. “ALTER”
For the purposes of Const 1963, art 12, § 2 and MCL 168.482(3), a proposed amendment “alters” an existing *782 provision if the proposed amendment would “ ‘add to, delete from, or change the existing wording of the provision . . . ”[27] The republication requirement applies only to alterations of the actual text of an existing provision.[28] If an amendment actually adds words to an existing provision, then republication is required. If an amendment actually deletes words from an existing provision, then republication is required. If an amendment actually changes the wording of an existing provision, then republication is required. But there is no such thing as a de facto or an indirect addition to, deletion from, or change in an existing provision. The fact that a proposed amendment might have a direct and obvious effect on the understanding of an existing provision is an insufficient basis from which to conclude that the proposed amendment alters an existing provision of the Constitution.
Under this standard, which is consistent with almost 80 years of jurisprudence in Michigan, offering an amendment as a new provision is dispositive on the issue of alteration. A new constitutional provision simply cannot alter an existing provision (though it may abrogate an existing provision) when the new provision leaves the text of all existing provisions completely intact.
B. “ABROGATE”
Because any amendment might have an effect on existing provisions, the “abrogation” standard makes clear that republication is only triggered by a change that would essentially eviscerate an existing provision. Our caselaw establishes that an existing provision of *783 the Constitution is abrogated and, thus, must be republished if it is rendered “wholly inoperative.”[29] An existing constitutional provision is rendered wholly inoperative if the proposed amendment would make the existing provision a nullity[30] or if it would be impossible for the amendment to be harmonized with the existing provision when the two provisions are considered together. That is, if two provisions are incompatible with each other, the new provision would abrogate the existing provision and, thus, the existing provision would have to be republished. An existing provision is not rendered wholly inoperative if it can be reasonably construed in a manner consistent with the new provision, i.e., the two provisions are not incompatible.
Determining whether the existing and new provisions can be harmonized requires careful consideration of the actual language used in both the existing provision and the proposed amendment. An existing provision that uses nonexclusive or nonabsolute language is less likely to be rendered inoperative simply because a proposed new provision introduces in some manner a change to the existing provision. Rather, when the existing provision would likely continue to exist as it did preamendment, although it might be affected or supplemented in some fashion by the proposed amendment, no abrogation occurs. On the other hand, a proposed amendment more likely renders an existing provision inoperative if the existing provision creates a mandatory requirement or uses language providing an exclusive power or authority because any change to such a provision would tend to negate the specifically conferred constitutional requirement.
*784 Massey helps to illustrate this distinction. Article 4, § 7 of the 1963 Michigan Constitution contains a list of qualifications for members of the Legislature. Because that list did not purport to be exclusive, the term-limit amendment — which added an additional qualification to article 4, § 54 of the Michigan Constitution, limiting the length of time a legislator could serve — did not abrogate article 4, § 7 because the original qualifications remained fully in effect. However, had the existing list of qualifications purported to be the exclusive list of qualifications, then the new qualification contained in article 4, § 54 would have abrogated the existing provision because it would have been impossible to harmonize the additional qualification with an exclusive list of qualifications, i.e., the two provisions would have been incompatible. Thus, if the existing and new provisions can be harmonized, the amendment does not render the existing provision wholly inoperative.
This abrogation analysis requires consideration of not just the whole existing constitutional provision, but also the provision’s discrete subparts, sentences, clauses, or even, potentially, single words. If the proposed amendment renders wholly inoperative any one of those discrete components, then the petition must republish the entire provision. For example, if a proposed constitutional amendment sought to reduce the age of eligibility to become a Michigan senator or representative, article 4, § 7, would have to be republished because the existing age-eligibility requirement, 21 years of age, is a discrete constitutional mandate even though it is included in a sentence that contains several additional eligibility requirements. In contrast, the term-limit amendment considered in Massey created no direct conflict with the specific eligibility requirements but merely added an additional one.
*785 III. APPLICATION
A. COLLECTIVE-BARGAINING AMENDMENT — DOCKET NO. 145748
Citizens Protecting Michigan’s Constitution (CPMC), which opposes the collective-bargaining initiative, alleges that the proposed amendment will alter or abrogate article 4, §§48 and 49 of the 1963 Michigan Constitution. The proposed amendment would neither alter nor abrogate either of those sections. First, the proposed amendment would leave the current text of both sections completely intact. Even if a proposed amendment’s new provision specifically refers to or quotes an existing constitutional power and then proceeds to limit that power, as the proposed collective-bargaining amendment does with § 49, there would be no alteration of the existing provision because the text of the existing provision itself would remain unchanged. Thus, it would not alter the existing provisions.
Likewise, the proposed amendment would not abrogate either existing section in question because neither would be rendered a nullity. Section 49 provides that “[t]he legislature may enact laws relative to the hours and conditions of employment.” Similarly, § 48 provides that “[t]he legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service.” CPMC alleges that these sections are abrogated by the Protect Our Jobs proposal, which declares that “[n]o existing or future law of the state or its political subdivisions shall abridge, impair or limit” the collective-bargaining rights secured by other portions of the proposed amendment. But CPMC misapprehends the meaning of abrogation in the context of the established petition law of this state. Under the existing constitutional language, *786 the legislative power is broad, but it is neither absolute nor exclusive. Neither section suggests that this power cannot be limited or affected by other provisions of the Constitution. Therefore, the Legislature may still enact the laws provided for in §§ 48 and 49, but should the amendment pass, the power to do so could be limited by collective-bargaining agreements. Because the Legislature retains the same nonexclusive grant of power, neither section would be rendered wholly inoperative.
B. BRIDGE AMENDMENT — DOCKET NO. 145755
Taxpayers Against Monopolies (TAM) opposes the amendment proposed by The People Should Decide (TPSD). TAM argues that the TPSD proposal would alter or abrogate three sections of the Constitution. Again, we respectfully disagree.
TAM argues that the new proposed constitutional provision would alter or abrogate article 2, § 9 of the 1963 Michigan Constitution, which provides the procedures for voting on an initiative or referendum, because it incorporates the procedures of article 2, § 9 by reference but then modifies those procedures when exercised with regard to votes on international bridge projects. The text of article 2, § 9 would remain untouched if the amendment passes, and thus no alteration would occur. Furthermore, the substance of article 2, § 9 would be completely unchanged by the proposal. It would be neither negated nor rendered inoperative, so no abrogation would occur.
TAM next argues that TPSD’s amendment would alter or abrogate article 3, § 6 of the 1963 Michigan Constitution, governing the state’s interest in internal improvements, because TPSD chose to situate its proposed amendment as article 3, § 6a. Importantly, TPSD has not proposed modifying § 6 itself. Instead, it has *787 proposed a wholly new section that, in TPSD’s view, is best located in Michigan’s constitutional scheme between § 6 and § 7 of article 3. Because it would be a new section of the Constitution, there would be no alteration of the text of any existing provision. The mere fact that the proponents of the amendment chose to situate a new section between two existing sections of the Constitution would not, by itself, alter the existing sections. Furthermore, there would be no abrogation because § 6 remains fully operative.
Lastly, TAM argues that the proposal would alter or abrogate article 7, § 16 of the 1963 Michigan Constitution, which provides the Legislature with the nonexclusive authority to provide for various infrastructure projects. Here again, there would be no alteration because the text of the existing provision would be unaffected by the proposed amendment. There would also be no abrogation. The relevant text of article 7, § 16 reads:
The legislature may provide for the laying out, construction, improvement and maintenance of highways, bridges, culverts and airports by the state and by the counties and townships thereof; and may authorize counties to take charge and control of any highway within their limits for such purposes. The legislature may provide the powers and duties of counties in relation to highways, bridges, culverts and airports; may provide for county road commissioners to be appointed or elected, with powers and duties provided by law. [Emphasis added.]
Each grant of power in this section is open-ended; no specific or discreet grant is made. The Legislature may still provide for any project as before, though the scope of this nonexclusive power might be limited by the proposed amendment requiring a popular vote before construction of a bridge. So clearly the power would not be rendered wholly inoperative.
*788 C. TWO-THIRDS VOTE TO RAISE TAXES AMENDMENT-DOCKET NO. 145753
Defend Michigan Democracy (DMD) is challenging the amendment proposed by Michigan Alliance for Prosperity (MAP). DMD argues that MAP’s proposal requiring a 2k vote in the Legislature to effectuate a tax increase would alter or abrogate several existing sections. Like TPSD, MAP styled its proposed amendment as a number and letter combination, specifically article 9, § 26a. Again, this would not be an alteration or abrogation of article 9, § 26 of the 1963 Michigan Constitution. Instead, it is a proposal that places the proposed amendment in a particular, chosen place in the Constitution, and in doing so takes advantage of terms and definitions that apply only to a certain range of sections. However, it would neither alter nor abrogate § 26. Therefore, the petition did not need to republish § 26.
Additionally, MAP was not required to republish article 9, § 3 of the 1963 Michigan Constitution, which calls for a 3/4 vote to increase ad valorem taxes for school operation. That section would not be altered because its text would suffer no deletion, addition, or change. Furthermore, § 3 would not be abrogated because it would remain fully operative. Article 9, § 3 established a minimum vote requirement for an increase in ad valorem taxes. That minimum would remain operative and could be harmonized with the new amendment, especially given that the proposed amendment expressly leaves existing, more burdensome hurdles in place. Any vote that satisfies the 3k requirement will necessarily satisfy the 2k requirement. Therefore, this section will not be abrogated if the amendment is adopted.
Similar logic applies to DMD’s argument that MAP was required to republish article 9, § 6 of the 1963 Michigan Constitution. This section of the Constitution *789 states, in part, that property taxes may be increased “if approved by a majority of the electors, qualified under Section 6 of Article II of this constitution, voting on the question.” This section applies to local millages, not state taxes, but even if it were to be affected by the proposed amendment, it did not need to be republished. The text would be untouched by the amendment so there would be no alteration. There would also be no abrogation because the procedures in § 6 do not purport to be exclusive. That the proposed amendment would require the vote by the electors to be in November would not abrogate § 6; it would merely add a more specific requirement to the existing procedure. Likewise, the addition of a second means to raise these taxes (by a 2h vote of the Legislature) is permissible without republication when the existing provision did not purport to be the exclusive procedure.
DMD’s argument that the proposed amendment will alter or abrogate article 9, §§ 1 and 2 of the 1963 Michigan Constitution, is without merit. Section 1 empowers the Legislature to impose taxes, and § 2 states that the power shall not be “surrendered, suspended or contracted away.” The text of both sections would remain unchanged and, therefore, unaltered. The proposed amendment would abrogate neither section because both sections would continue to empower the Legislature in the same manner as before the passage of the amendment. The Legislature’s power would not be negated; the proposed amendment would simply require a larger majority to exercise that power. DMD further argues that these sections would be abrogated by allowing a majority of the electors to enact or raise taxes, which had previously been the exclusive province of the Legislature. But contrary to DMD’s assertion, the Legislature has never held this power to the exclusion of the people. Indeed, article 2, § 9 of the 1963 Michigan Constitution has always reserved to *790 the people the power to enact any law the Legislature could enact, including a tax. Logically, when the people have already reserved to themselves the broad power to enact laws coextensive with the power of the Legislature, the assertion of that power cannot be deemed an abrogation.
D. CASINO AMENDMENT — DOCKET NO. 145754
Protect MI Constitution argues that the Citizens for More Michigan Jobs (CFMMJ) proposal will alter or abrogate article 4, § 40 of the 1963 Michigan Constitution. This section states in part:
Except as prohibited by this section, (t)he legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof. [Emphasis added.]
The proposed amendment would not alter § 40 because it would not add to, subtract from, or change the text of § 40.
However, the proposed amendment would abrogate § 40. The proposed amendment states in part:
All of the casinos authorized by this section shall be granted liquor licenses issued by the state of Michigan to serve alcoholic beverages on the premises. [Emphasis added.]
It is undisputed that part of the Liquor Control Commission’s “complete control of the alcoholic beverage traffic within this state, including the retail sales thereof” entails the granting of liquor licenses.[31] Furthermore, § 40 expressly states that the commission’s control is “complete.” Because complete control necessarily communicates the exclusivity of control, any infringement on that control abrogates that exclusivity; an amendment that *791 contemplates anything less than complete control logically renders that power in § 40 inoperative. The proposed section would nullify the “complete” control currently established by the Constitution by taking specific decisions whether to grant or deny a liquor license to the newly established casinos out of the “control” of the commission.[32] Because the proposed amendment would abrogate article 4, § 40, republication of that section on the petition was necessary to comply with the republication requirement of MCL 168.482(3). The failure to do so is fatal to the proposed amendment, and we must therefore deny mandamus.
IV CONCLUSION
In concluding, we reiterate our holdings so that the people will hereafter know with all the certainty and precision that is reasonably possible what is required to properly petition to amend the Constitution:
1. When the existing language of a constitutional provision would be altered or abrogated by the proposed amendment, republication of the existing provision is required.
2. The language of the amendment itself, rather than how proponents or opponents of the amendment characterize its meaning, controls whether an existing provision would be altered or abrogated by the proposed amendment.
*792 3. When, the existing language of a constitutional provision would not be altered, but the proposed amendment would render the entire provision or some discrete component of the provision wholly inoperative, abrogation would occur and republication of the existing language is required.
4. When the existing language would not be altered or abrogated, but the proposed amendment would only have an effect on the existing language, and the new and existing provisions can be harmoniously construed, republication of the existing provision is not required.
5. When the existing language would not be altered or abrogated, but the proposed amendment would only have an effect on the existing language, thereby requiring that the new and existing provisions be interpreted together, republication of the existing provision is not required.
Accordingly, in Protect Our Jobs we affirm the judgment of the Court of Appeals granting relief on the complaint for mandamus. In Michigan Alliance for Prosperity and The People Should Decide, we grant relief on the complaints for mandamus in part, and direct the Board of State Canvassers, the Secretary of State, and the Director of Elections to proceed as necessary to place the proposed constitutional amendments on the November 2012 election ballot. We deny relief in all other respects. In Citizens for More Michigan Jobs we dismiss the complaint for mandamus filed in the Court of Appeals and deny relief in all other respects.
Pursuant to MCR 7.317(C)(3), we direct the Clerk of the Court to issue the judgment orders forthwith. No motion for rehearing will be entertained.
YOUNG, C.J., and MARKMAN and MARY BETH KELLY, JJ., concurred with ZAHRA, J.

 Const 1963, art 1, § 1.

 Const 1963, art 12, § 2.

 Scott v Secretary of State, 202 Mich 629, 643; 168 NW 709 (1918).

 Ferency v Secretary of State, 409 Mich 569, 597; 297 NW2d 544 (1980).

 On August 30, 2012, this Court heard oral argument on the applications for leave to appeal, addressing whether the republication requirements of Const 1963, art 12, § 2 and MCL 168.482(3), requiring that petitions set forth any other existing provisions of the Constitution that would be altered or abrogated by the proposed amendment, had been satisfied. Our opinion today is based on this issue alone. We are not persuaded that any party is entitled to relief on any of the other grounds raised before the Court.

 Protect Our Jobs v Bd of State Canvassers, unpublished opinion per curiam of the Court of Appeals, issued August 27, 2012 (Docket No. 311828).

 Protect MI Constitution v Secretary of State, 297 Mich App 553; 824 NW2d 299 (2012).

 Protect MI Constitution v Secretary of State, 492 Mich 860 (2012).

 Id.

 Stand Up For Democracy v Bd of State Canvassers, 492 Mich 588, 594, 601-602, 619; 822 NW2d 159 (2012) (opinion by Mary Beth Kelly, J.); id. at 620, 622-623 (opinion by Young, C.J.); id. at 637, 640 (opinion by Mahkman, J.).

 Sch Dist of City of Pontiac v City of Pontiac, 262 Mich 338, 344; 247 NW 474 (1933).

 Const 1908, art 17, § 3.

 Pontiac, 262 Mich at 341-342.

 Id. at 343.

 Id. at 344.

 Id. at 345.

 Ferency, 409 Mich 569.

 Id. at 597.

 Id. at 597-598.

 Massey v Secretary of State, 457 Mich 410; 579 NW2d 862 (1998).

 Id. at 418 (citation and quotation marks omitted).

 Id.

 Id., quoting Ferency, 409 Mich at 597.

 Massey, 457 Mich at 418.

 Pontiac, 262 Mich at 344.

 Ferency, 409 Mich at 598.

 Massey, 457 Mich at 418, quoting Ferency, 409 Mich at 597.

 Massey, 457 Mich at 418 (“The phrase ‘the existing wording’ should be taken literally.”).

 Id.

 See id.; Coalition to Defend Affirmative Action & Integration v Bd of State Canvassers, 262 Mich App 395, 402; 686 NW2d 287 (2004).

 Const 1963, art 4, § 40 (emphasis added).

 Even though the amendment affects only a small fraction of the power to control alcoholic beverage traffic, which power itself is only a portion of Const 1963, art 4, § 40, a provision of § 40 has been negated and, thus, abrogated, thereby requiring republication of the entire constitutional section. At oral argument on this application, even CFM-MJ’s counsel conceded that the proposed amendment would erode the exclusive and total control of the commission, thereby constituting an abrogation of § 40.