# Syllabus

| | |
|---|---|
| Chief Justice: | Justices: |
| Robert P. Young, Jr. | Michael F. Cavanagh |
| | Marilyn Kelly |
| | Stephen J. Markman |
| | Diane M. Hathaway |
| | Mary Beth Kelly |
| | Brian K. Zahra |

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

PROTECT OUR JOBS v BOARD OF STATE CANVASSERS
MICHIGAN ALLIANCE FOR PROSPERITY v BOARD OF STATE CANVASSERS
CITIZENS FOR MORE MICHIGAN JOBS v SECRETARY OF STATE
THE PEOPLE SHOULD DECIDE v BOARD OF STATE CANVASSERS

Docket Nos. 145748, 145753, 145754, and 145755. Argued August 30, 2012. Decided September 5, 2012.

Protect Our Jobs, a ballot question committee, brought an action in the Court of Appeals, seeking a writ of mandamus directing the Board of State Canvassers and the Director of Elections to place on the November 2012 general election ballot its proposal for amendments of the Constitution that provide for and protect various collective-bargaining rights. The board had approved the form of the petition and the director had found that there were sufficient valid signatures to qualify the petition, but the board deadlocked on whether the petition should be placed on the ballot, with two members voting to do so and two voting against. Under MCL 168.22d(2), the proposal therefore did not qualify for placement on the ballot. In an unpublished order entered August 16, 2012 (Docket No. 311828), the Court of Appeals granted a motion to intervene filed by Citizens Protecting Michigan's Constitution (CPMC), another ballot question committee. The Court of Appeals, OWENS, P.J., and RONAYNE KRAUSE, J. (O'CONNELL, J., dissenting), granted mandamus in an unpublished opinion per curiam issued August 27, 2012 (Docket No. 311828), and ordered the board and director to take the necessary steps to place the proposal on the ballot. The Supreme Court ordered and heard oral argument on whether to grant CPMC's application for leave to appeal or take other peremptory action, directing the parties to address whether the requirements of Const 1963, art 12, § 2 and MCL 168.482(3) that petitions set forth any other existing provisions of the Constitution that would be altered or abrogated by the proposed amendment had been satisfied. 492 Mich ___ (2012) (Docket No. 145748).

Michigan Alliance For Prosperity, a ballot question committee, brought an action in the Court of Appeals, seeking a writ of mandamus directing the board, the director, and the Secretary of State to place on the ballot its proposal for amendments of the Constitution that would require a ⅔ majority of both houses of the Legislature or a statewide vote to raise taxes or enact a new tax. The board had voted 2-1 in favor of certifying the petition, but the proposal did not qualify for placement on the ballot under the requirements of MCL 168.22d(2) because at least one member from each major political party had not concurred. Michigan Alliance also sought leave to appeal in the Supreme Court under MCR 7.302(C) before a decision by the Court of Appeals with respect to its complaint and further sought mandamus in the Supreme Court. Defend Michigan Democracy, another ballot question committee, moved to intervene in the Supreme

Court.  The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action, directing the parties to address whether the requirements of Const 1963, art 12, § 2 and MCL 168.482(3) had been satisfied.  492 Mich ___ (2012) (Docket No. 145753).

Citizens for More Michigan Jobs (CFMMJ), a ballot question committee, sought to place on the ballot its proposal for amendments of the Constitution that would expand casino gaming in Michigan by allowing eight additional casinos in the state.  Protect MI Constitution (PMC), another ballot question committee, brought an action in the Court of Appeals, seeking a writ of mandamus directing the Secretary of State to reject the petition.  The Court of Appeals granted CFMMJ's motion to intervene in an unpublished order entered August 2, 2012 (Docket No. 311504).  Subsequently, the Court of Appeals, OWENS, P.J., and O'CONNELL, J. (RONAYNE KRAUSE, J., concurring in part and dissenting in part), granted mandamus and ordered the Secretary of State to reject the petition and not allow the proposal on the ballot, concluding that the petition violated Const 1963, art 4, § 25, which states that a law may not be altered, revised, or amended without republication of the affected statutes.  *Protect MI Constitution v Secretary of State*, ___ Mich App ___ (2012).  In lieu of granting CFMMJ's application for leave to appeal, the Supreme Court reversed and vacated the Court of Appeals' mandamus order, concluding that Const 1963, art 4, § 25 did not apply to constitutional amendments.  The Supreme Court directed the Secretary of State, the board, and the director to proceed.  492 Mich ___ (entered August 24, 2012, Docket No. 145698).  The board subsequently voted 2-1 in favor of approving placement of the proposal on the ballot, but the proposal did not qualify under MCL 168.22d(2) for placement on the ballot because at least one member from each major political party had not concurred.  CFMMJ and Robert J. Cannon (a qualified, registered voter) brought an action in the Court of Appeals, seeking a writ of mandamus directing the Secretary of State, the board, and the director to take all steps necessary to place the proposal on the ballot and also sought leave to appeal in the Supreme Court under MCR 7.302(C) before a decision by the Court of Appeals with respect to its complaint.  PMC moved to intervene in the Supreme Court.  The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action, directing the parties to address whether the requirements of Const 1963, art 12, § 2 and MCL 168.482(3) had been satisfied.  492 Mich ___ (2012) (Docket No. 145754).

The People Should Decide (TPSD), a ballot question committee, brought an action in the Court of Appeals, seeking a writ of mandamus directing the board, the director, and the Secretary of State to place on the ballot its proposal for amendments of the Constitution that would require a statewide vote to approve the use of state funds with respect to a new international bridge or tunnel.  The board subsequently voted 2-1 in favor of approving placement of the proposal on the ballot, but the proposal did not qualify under MCL 168.22d(2) for placement on the ballot because at least one member from each major political party had not concurred.  TPSD also sought leave to appeal in the Supreme Court under MCR 7.302(C) before a decision by the Court of Appeals with respect to its complaint and filed a complaint for mandamus in the Supreme Court. Taxpayers Against Monopolies, another ballot question committee, moved to intervene in the Supreme Court.  The Supreme Court ordered and heard oral argument on whether to grant the application or take other peremptory action, directing the parties to address whether the requirements of Const 1963, art 12, § 2 and MCL 168.482(3) had been satisfied.  492 Mich ___ (2012) (Docket No. 145755).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN and MARY BETH KELLY, the Supreme Court *held*:

Const 1963, art 12, § 2 and MCL 168.482(3) require republication of any existing provisions of the Constitution that a proposed constitutional amendment would alter or abrogate. An amendment would alter an existing provision only when the amendment would actually add to, delete from, or change the existing wording of the provision, and an amendment would abrogate an existing provision only when it would render that provision wholly inoperative.

1. Const 1963, art 12, § 2 governs the amendment of the Constitution by petition and vote. It requires in part that existing provisions of the Constitution that would be altered or abrogated by the proposed amendment be published in full as provided by law. MCL 168.482(3) sets forth the requirements for a petition seeking an amendment. It requires that the petition state that a constitutional provision would be altered or abrogated and further requires that the provision that would be altered or abrogated be inserted in the petition. Const 1963, art 12, § 2 and MCL 168.482(3) together establish the requirements for publishing existing constitutional provisions. Petition supporters must fully comply with the requirement that the petition republish any existing constitutional provision that the proposed amendment would alter or abrogate.

2. The phrase "existing wording" in Const 1963, art 12, § 2 refers to the actual text of an existing constitutional provision. Thus, the language of the amendment itself, rather than how proponents or opponents of the amendment characterize its meaning, controls whether an existing provision would be altered or abrogated by the proposed amendment.

3. A proposed amendment would alter an existing provision and republication is required only if the proposed amendment would actually (1) add words to, (2) delete words from, or (3) change the wording of an existing provision. There are no de facto or indirect additions to, deletions from, or changes in an existing provision, however, and the fact that a proposed amendment might have a direct and obvious effect on the understanding of an existing provision is an insufficient basis from which to conclude that the proposed amendment would alter an existing constitutional provision. Therefore, offering an amendment as a new provision is dispositive on the issue of alteration. A new provision could not alter an existing provision (though it might abrogate an existing provision) when the new provision would leave the text of all other existing provisions completely intact.

4. When the existing language of a constitutional provision would not be altered, abrogation would nonetheless occur and republication of the existing language is required if the proposed amendment would render the entire provision or some discrete component of it wholly inoperative. This would occur if the amendment would make the existing provision a nullity or it would be impossible for the amendment to be harmonized with the existing provision when the two provisions are considered together. An existing provision is not rendered wholly inoperative if it can be construed consistently with the new provision. Determining whether the existing and new provisions can be harmonized requires careful consideration of the actual language used in both the existing provision and the proposed amendment. Determining whether abrogation will

occur requires consideration of not just the whole existing constitutional provision, but also the provision's discrete subparts, sentences, clauses, or, potentially, single words. An existing provision that uses nonexclusive language or language that is not absolute would be less likely to be rendered inoperative simply because a proposed new provision will introduce in some manner a change to the existing provision. Rather, if the existing provision would likely continue to exist as it did before the amendment even though it might be affected or supplemented in some fashion, no abrogation would occur. A proposed amendment would more likely render an existing provision inoperative if the existing provision creates a mandatory requirement or uses language providing an exclusive power or authority because any change to that provision would tend to negate the specifically conferred constitutional requirement.

5. In *Protect Our Jobs v Board of State Canvassers*, the proposed collective-bargaining amendment would not alter an existing constitutional provision because it would leave the current text of both § 48 and § 49 of article 4 of the 1963 Constitution completely intact. Nor would it abrogate either section because while the proposed amendment would allow collective-bargaining agreements to limit the Legislature's power under those sections, the Legislature would nonetheless retain that nonexclusive power and neither section would be rendered wholly inoperative.

6. In *The People Should Decide v Board of State Canvassers*, the proposed bridge amendment, which would add a new article 3, § 6a to the Constitution, would not alter the text of Const 1963, art 2, § 9; art 3, § 6; or art 7, § 16. Moreover, article 2, § 9 and article 3, § 6 would remain fully operative, and the scope of the Legislature's nonexclusive powers to provide for various infrastructure projects under article 7, § 16 would only be limited by the requirement of a vote before construction of certain bridges.

7. In *Michigan Alliance for Prosperity v Board of State Canvassers*, the proposed amendment to require a ⅔ vote to raise taxes would not alter the text of Const 1963, art 9, §§ 1, 2, 3, 6, or 26. Nor would it abrogate those sections. In particular, with respect to article 9, §§ 1 and 2, the amendment would not negate the Legislature's power with respect to taxes, but would simply require a larger majority to exercise that power. Moreover, the people reserved to themselves the broad power to enact laws coextensive with the power of the Legislature. With respect to article 9, § 3, which requires a ¾ vote to increase ad valorem taxes for school operations, any vote that satisfies the existing ¾ requirement would necessarily satisfy the proposed ⅔ requirement.

8. In *Citizens for More Michigan Jobs v Secretary of State*, the proposed casino amendment would not alter Const 1963, art 4, § 40, which vests exclusive control over alcoholic-beverage traffic in the Liquor Control Commission. Because the amendment would require the granting of liquor licenses to the new casinos, however, it would nullify the complete control currently afforded to the commission and thus would abrogate that constitutional provision. The failure to republish article 4, § 40 was fatal to the proposed amendment, and mandamus could not be ordered.

Court of Appeals' judgment affirmed in *Protect Our Jobs*.

Relief on complaints for mandamus granted in part in *Michigan Alliance* and *People Should Decide*, and defendants directed to proceed as necessary to place the proposed amendments on the ballot.

Complaint for mandamus in the Court of Appeals dismissed in *Citizens for More Michigan Jobs*.

Justice MARILYN KELLY, joined by Justices CAVANAGH and HATHAWAY, concurring in part and dissenting in part, concurred in the result reached in *Protect Our Jobs*, *Michigan Alliance*, and *People Should Decide*, but dissented from the result reached in *Citizens for More Michigan Jobs*. The amendment proposed in that case would neither alter nor abrogate Const 1963, art 4, § 40. The Liquor Control Commission's control over alcoholic-beverage traffic is neither complete nor exclusive, but is subject to limits that the Legislature chooses to place on it, and if the Legislature may subject the commission's control to limitations, then so may the people of this state. The people of the state have an inherent and superior right to amend the Constitution and alter the authority of that legislatively created commission. Because article 4, § 40 would not be altered or abrogated, there was no need for the petition to satisfy the republication requirement. Justice KELLY would have granted relief on the complaint for mandamus and directed the Secretary of State, the board, and the director to take the necessary steps to place the proposed amendment on the ballot.

©2012 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED SEPTEMBER 5, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

PROTECT OUR JOBS,

      Plaintiff-Appellee,

v                                                    No.  145748

BOARD OF STATE CANVASSERS and
DIRECTOR OF ELECTIONS,

      Defendants-Appellees,
and

CITIZENS PROTECTING MICHIGAN'S
CONSTITUTION,

      Intervening  Defendant-
      Appellant.

---

MICHIGAN ALLIANCE FOR
PROSPERITY,

      Plaintiff-Appellant,

v                                                    No.  145753

BOARD OF STATE CANVASSERS,
DIRECTOR OF ELECTIONS, and
SECRETARY OF STATE,

Defendants-Appellees,

and

DEFEND MICHIGAN DEMOCRACY,

Intervenor.

---

CITIZENS FOR MORE MICHIGAN JOBS
and ROBERT J. CANNON,

Plaintiffs-Appellants,

v                                                       No. 145754

SECRETARY OF STATE, BOARD OF
STATE CANVASSERS, and DIRECTOR
OF ELECTIONS,

Defendants-Appellees,

and

PROTECT MI CONSTITUTION,

Intervenor.

---

THE PEOPLE SHOULD DECIDE,

Plaintiff-Appellant,

v                                                       No. 145755

BOARD OF STATE CANVASSERS,
DIRECTOR OF ELECTIONS, and
SECRETARY OF STATE,

Defendants-Appellees,

and

TAXPAYERS AGAINST MONOPOLIES,

        Intervenor.

_____

BEFORE THE ENTIRE BENCH

ZAHRA, J.

Article 1, § 1 of Michigan's Constitution states: "All political power is inherent in the people. Government is instituted for their equal benefit, security and protection."[1] Within our Constitution, the people have allocated certain portions of their inherent powers to the branches of government. But the people have also reserved certain powers to themselves. Among these powers is the right to amend the Constitution by petition and popular vote.[2] This Court has consistently protected the right of the people to amend their Constitution in this way, while enforcing constitutional and statutory safeguards that the people placed on the exercise of that right. Nearly one century ago we recognized that

> [o]f the right of qualified voters of the State to propose amendments to the Constitution by petition it may be said, generally, that it can be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises. But the right is to be exercised in a certain way and according to certain conditions, the limitations upon its exercise, like the reservation of the right itself, being found in the Constitution.[3]

These four cases, each involving a ballot proposal to amend the Michigan Constitution, ask us to decide whether the groups proposing the amendments properly

_____

[1] Const 1963, art 1, § 1.

[2] Const 1963, art 12, § 2.

[3] *Scott v Secretary of State*, 202 Mich 629, 643; 168 NW 709 (1918).

3

exercised their right to petition for constitutional amendments in compliance with the constitutional and statutory safeguards. Specifically, these cases present the issue whether the petitions for each proposal satisfied the requirement under Const 1963, art 12, § 2 and MCL 168.482(3) to republish any existing provisions of the Constitution that the proposed amendment would alter or abrogate. We reaffirm our prior caselaw holding that an existing provision is only altered when the amendment actually adds to, deletes from, or changes the wording of the provision. We further reaffirm that an amendment only abrogates an existing provision when it renders that provision wholly inoperative.

Applying the meanings of "alter" and "abrogate" to the cases at hand, we conclude that none of the ballot proposals alter an existing provision of the Constitution because none of them actually "add to, delete from, or change the existing wording of the provision . . . ."[4] In addition, we conclude that only the ballot proposal relating to casinos in *Citizens for More Michigan Jobs v Secretary of State* (Docket No. 145754) abrogates an existing constitutional provision. Specifically, the casino amendment's requirement that the casinos authorized by the amendment "shall be granted" liquor licenses by the state of Michigan renders wholly inoperative the "complete control of the alcoholic beverage traffic within this state" afforded to the Liquor Control Commission under an existing provision of the Constitution—Const 1963, art 4, § 40. Therefore, article 4, § 40 was required to be republished on the petition to inform the people of this abrogation.

Accordingly, in *Protect Our Jobs v Board of State Canvassers* (Docket No. 145748), we affirm the judgment of the Court of Appeals granting relief on the complaint

---

[4] *Ferency v Secretary of State*, 409 Mich 569, 597; 297 NW2d 544 (1980).

4

for mandamus.  In *Michigan Alliance for Prosperity v Board of State Canvassers* (Docket No. 145753) and *The People Should Decide v Board of State Canvassers* (Docket No. 145755), we grant relief on the complaints for mandamus in part and direct the Secretary of State, the Board of State Canvassers, and the Director of Elections to proceed as necessary to place the proposed constitutional amendments on the November 2012 election ballot.  We deny relief in all other respects.  In *Citizens for More Michigan Jobs*, we dismiss the complaint for mandamus filed in the Court of Appeals and deny relief in all other respects.

## I.  BACKGROUND

In each of these four cases, ballot question committees have proposed amendments of the 1963 Michigan Constitution.  Each committee has obtained the required number of valid signatures for placement on the ballot.  But each proposal was challenged before the Board of State Canvassers.  Although the proposed amendments pertain to different subjects, the common argument challenging the proposals that we are considering concerns whether any of the proposed amendments will alter or abrogate an existing constitutional provision that was not republished on the petition.[5]

In *Protect Our Jobs*, the ballot question committee Protect Our Jobs proposes an amendment that would enshrine certain collective-bargaining rights in the Constitution.

---

[5] On August 30, 2012, this Court heard oral argument on the applications for leave to appeal, addressing whether the republication requirements of Const 1963, art 12, § 2 and MCL 168.482(3), requiring that petitions set forth any other existing provisions of the Constitution that would be altered or abrogated by the proposed amendment, had been satisfied.  Our opinion today is based on this issue alone.  We are not persuaded that any party is entitled to relief on any of the other grounds raised before the Court.

5

Its petition was challenged at the Board of State Canvassers by Citizens Protecting Michigan's Constitution. Because the board refused to certify the proposal for the ballot, Protect Our Jobs sought a writ of mandamus in the Court of Appeals. The Court of Appeals granted the writ of mandamus,[6] which led Citizens Protecting Michigan's Constitution to file the instant application.

In *Citizens for More Michigan Jobs*, the ballot question committee Citizens for More Michigan Jobs proposes an amendment that would allow for the construction of eight new casinos in Michigan and designate their locations. Its petition was challenged by Protect MI Constitution, which sought a writ of mandamus in the Court of Appeals directing the Secretary of State to reject the ballot petition for a constitutional amendment. The Court of Appeals granted the requested relief.[7] This Court reversed the judgment of the Court of Appeals and vacated that Court's order of mandamus, concluding that the constitutional amendment proposal is not an improper attempt to amend a statute and, thus, that the failure to publish an affected statute on the petition was not fatal to the proposal.[8] This Court ordered the Secretary of State, the Board of State Canvassers, and the Director of Elections to proceed.[9] Upon consideration by the board,

---

[6] *Protect Our Jobs v Bd of State Canvassers*, unpublished opinion per curiam of the Court of Appeals, issued August 27, 2012 (Docket No. 311828).

[7] *Protect MI Constitution v Secretary of State*, ___ Mich App ___; ___ NW2d ___ (Docket No. 311504, issued August 14, 2012).

[8] *Protect MI Constitution v Secretary of State*, 492 Mich ___ (Docket No. 145698, entered August 24, 2012).

[9] *Id*.

Protect MI Constitution again challenged the proposal on alternative grounds, and the board refused to certify it for the ballot. Citizens for More Michigan Jobs filed a complaint for mandamus in the Court of Appeals and an emergency bypass application for leave to appeal in this Court.

In *Michigan Alliance for Prosperity*, the ballot question committee Michigan Alliance for Prosperity proposes an amendment that requires a ⅔ vote of the Legislature or a vote of the people before any tax increase can be approved. At the Board of State Canvassers, the proposal was challenged by Defend Michigan Democracy. The board refused to certify the proposal for the ballot, and Michigan Alliance for Prosperity filed a complaint for mandamus in the Court of Appeals and an emergency bypass application for leave to appeal in this Court.

Lastly, in *The People Should Decide*, the ballot question committee The People Should Decide proposes an amendment that would require a popular vote before any new international bridge could be constructed. The proposal was challenged at the Board of State Canvassers by Taxpayers Against Monopolies. The board refused to certify the proposal for the ballot, and The People Should Decide filed a complaint for mandamus in the Court of Appeals and an emergency bypass application for leave to appeal in this Court.

As stated, there is no dispute that all four proposals have garnered sufficient signatures to be placed on the ballot. All that is left to decide before the proposed constitutional amendments may be placed on the November general election ballot is whether the petitions themselves complied with the constitutional and statutory safeguards that had to be satisfied.

## II. ANALYSIS

The challengers' arguments largely center on Const 1963, art 12, § 2 and MCL 168.482. Article 12, § 2 of the 1963 Michigan Constitution, which governs amendment of the Constitution by petition and vote, provides:

> Amendments may be proposed to this constitution by petition of the registered electors of this state. Every petition shall include the full text of the proposed amendment, and be signed by registered electors of the state equal in number to at least 10 percent of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected. Such petitions shall be filed with the person authorized by law to receive the same at least 120 days before the election at which the proposed amendment is to be voted upon. *Any such petition shall be in the form, and shall be signed and circulated in such manner, as prescribed by law.* The person authorized by law to receive such petition shall upon its receipt determine, as provided by law, the validity and sufficiency of the signatures on the petition, and make an official announcement thereof at least 60 days prior to the election at which the proposed amendment is to be voted upon.

> Any amendment proposed by such petition shall be submitted, not less than 120 days after it was filed, to the electors at the next general election. *Such proposed amendment, existing provisions of the constitution which would be altered or abrogated thereby, and the question as it shall appear on the ballot shall be published in full as provided by law.* Copies of such publication shall be posted in each polling place and furnished to news media as provided by law.

> The ballot to be used in such election shall contain a statement of the purpose of the proposed amendment, expressed in not more than 100 words, exclusive of caption. Such statement of purpose and caption shall be prepared by the person authorized by law, and shall consist of a true and impartial statement of the purpose of the amendment in such language as shall create no prejudice for or against the proposed amendment.

> If the proposed amendment is approved by a majority of the electors voting on the question, it shall become part of the constitution, and shall abrogate or amend existing provisions of the constitution at the end of 45 days after the date of the election at which it was approved. If two or more amendments approved by the electors at the same election conflict, that

amendment receiving the highest affirmative vote shall prevail. [Emphasis added.]

The Legislature accepted the Constitution's invitation to set forth publishing requirements for petitions. Relevant here, MCL 168.482(3) provides, in part:

> *If the proposal would alter or abrogate an existing provision of the constitution, the petition shall so state and the provisions to be altered or abrogated shall be inserted*, preceded by the words:

> "Provisions of existing constitution altered or abrogated by the proposal if adopted." [Emphasis added.]

Const 1963, art 12, § 2 and MCL 168.482(3) together establish the requirements for publishing existing constitutional provisions. In *Stand Up For Democracy v Board of State Canvassers*,[10] this Court held that a petition must fully comply with mandatory statutory provisions that pertain to a petition's requirements regarding form. MCL 168.482(3) uses the mandatory language "shall." Accordingly, the principle articulated in *Stand Up* applies with equal force here and, thus, the petition supporters must fully comply with the requirement that the petition republish any existing constitutional provision that the proposed amendment, if adopted, would alter or abrogate.

This Court has addressed and consistently defined the language "altered or abrogated" in the context of both the Constitution and the statute. In *School District of City of Pontiac v City of Pontiac*,[11] we first addressed the meaning of "altered or abrogated" as those terms appeared in an analogous provision of our 1908 Constitution.[12]

---

[10] *Stand Up For Democracy v Bd of State Canvassers*, 492 Mich ___, ___; ___ NW2d ___ (August 3, 2012, Docket No. 145387).

[11] *Sch Dist of City of Pontiac v City of Pontiac*, 262 Mich 338, 344; 247 NW 474 (1933).

[12] Const 1908, art 17, § 3.

The amendment at issue in *Pontiac* was designed to limit the amount of property taxes that the Legislature could assess.[13]  Its opponents argued that the amendment altered or abrogated provisions of the Constitution that allowed the Legislature to levy taxes, but the proposed amendment had failed to republish those provisions.[14]  This Court stated in response to these objections:

> That in case a proposed constitutional provision amends or replaces ("alters or abrogates") a specific provision of the Constitution, that such provision should be published along with the proposed amendment; that other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with the amending provision, need not necessarily be published.[15]

Accordingly, this Court held that because the challenged amendment created an entirely new section of the Constitution that left unaffected the wording of other provisions, no alteration or abrogation had occurred.[16]

In *Ferency v Secretary of State*,[17] this Court again addressed what it means to alter or abrogate an existing provision of the Constitution.  In *Ferency*, we dealt with a challenge to the proposed "Tisch Amendment" that was intended to reduce property taxes, holding

> that it is only where the proposed amendment would directly "alter or abrogate" ("amend or replace") a specific provision or provisions of the

---

[13] *Pontiac*, 262 Mich at 341-342.

[14] *Id.* at 343.

[15] *Id.* at 344.

[16] *Id.* at 345.

[17] *Ferency*, 409 Mich 569.

existing Constitution that the provision or provisions must be noted on the petitions. An existing constitutional provision is altered or abrogated if the proposed amendment would add to, delete from, or change the existing wording of the provision, or would render it wholly inoperative.[18]

This was a reasonable construction of those terms. In *Ferency*, we also cautioned that a more expansive definition of "alter or abrogate" would "chill" the ability of the people to amend their Constitution by potentially requiring the petition circulator to append the entire Constitution to ensure the validity of the petition to amend the Constitution.[19]

Finally, in *Massey v Secretary of State*,[20] this Court reaffirmed our holdings in *Ferency* and *Pontiac*. The Court clarified how to assess whether a proposed amendment would alter an existing provision, thereby requiring publication. We held that publication was required only when an amendment "would add to, delete from, or change *the existing wording*" of another constitutional provision and that the phrase "the existing wording" referred to the *actual text* of the provision.[21] In *Massey*, we concluded that the existing constitutional provision that set forth the qualifications for legislators was not altered by the addition of a new "term limits" constitutional provision, which established the additional qualification that a legislator not have served more than a specified number of prior terms in the Legislature, because the amendment did not change any words of any

---

[18] *Id.* at 597.

[19] *Id.* at 597-598.

[20] *Massey v Secretary of State*, 457 Mich 410; 579 NW2d 862 (1998).

[21] *Id.* at 418 (citation and quotation marks omitted).

11

existing provision, nor did it cause an abrogation because the amendment rendered no provision wholly inoperative.[22]

We conclude that the constructions offered in *Massey*, *Ferency*, and *Pontiac* are sound and reaffirm those cases and that reasoning. Thus, an existing provision is only "'altered or abrogated if the proposed amendment would add to, delete from, or change the existing wording of the provision, or would render it wholly inoperative.'"[23] Furthermore, the phrase "the existing wording" refers to the actual text of an existing constitutional provision.[24]

Nonetheless, because the application of these terms continues to be a cause for debate, we take this opportunity to provide additional clarity. We must take care to enforce the constitutional and statutory petition safeguards that exist to ensure that voters are adequately informed as they exercise their right to amend the Constitution. In doing so, we have reasoned that "the ordinary elector, not being a constitutional lawyer, would be confused rather than helped by a publication of all the other constitutional provisions which were or might be directly or only remotely, and possibly only contingently, affected by the proposed amendment."[25] We also must use caution not to usher in an interpretation by which we would "effectively require a petition circulator . . . to secure a judicial determination of which provisions of the existing Constitution the proposed

---

[22] *Id.*

[23] *Id.*, quoting *Ferency*, 409 Mich at 597.

[24] *Massey*, 457 Mich at 418.

[25] *Pontiac*, 262 Mich at 344.

12

amendment would 'alter or abrogate.'"[26] With these principles in focus, we turn to the specific terms "alter" and "abrogate."

## A. "ALTER"

For the purposes of Const 1963, art 12, § 2 and MCL 168.482(3), a proposed amendment "alters" an existing provision if the proposed amendment would "'add to, delete from, or change the existing wording of the provision . . . .'"[27] The republication requirement applies only to alterations of the actual text of an existing provision.[28] If an amendment actually adds words to an existing provision, then republication is required. If an amendment actually deletes words from an existing provision, then republication is required. If an amendment actually changes the wording of an existing provision, then republication is required. But there is no such thing as a de facto or an indirect addition to, deletion from, or change in an existing provision. The fact that a proposed amendment might have a direct and obvious effect on the understanding of an existing provision is an insufficient basis from which to conclude that the proposed amendment alters an existing provision of the Constitution.

Under this standard, which is consistent with almost 80 years of jurisprudence in Michigan, offering an amendment as a new provision is dispositive on the issue of alteration. A new constitutional provision simply cannot alter an existing provision

---

[26] *Ferency*, 409 Mich at 598.

[27] *Massey*, 457 Mich at 418, quoting *Ferency*, 409 Mich at 597.

[28] *Massey*, 457 Mich at 418 ("The phrase 'the existing wording' should be taken literally.").

13

(though it may abrogate an existing provision) when the new provision leaves the text of all existing provisions completely intact.

## B. "ABROGATE"

Because any amendment might have an effect on existing provisions, the "abrogation" standard makes clear that republication is only triggered by a change that would essentially eviscerate an existing provision. Our caselaw establishes that an existing provision of the Constitution is abrogated and, thus, must be republished if it is rendered "wholly inoperative."[29] An existing constitutional provision is rendered wholly inoperative if the proposed amendment would make the existing provision a nullity[30] or if it would be impossible for the amendment to be harmonized with the existing provision when the two provisions are considered together. That is, if two provisions are incompatible with each other, the new provision would abrogate the existing provision and, thus, the existing provision would have to be republished. An existing provision is not rendered wholly inoperative if it can be reasonably construed in a manner consistent with the new provision, i.e., the two provisions are not incompatible.

Determining whether the existing and new provisions can be harmonized requires careful consideration of the actual language used in both the existing provision and the proposed amendment. An existing provision that uses nonexclusive or nonabsolute language is less likely to be rendered inoperative simply because a proposed new

---

[29] *Id.*

[30] See *id.*; *Coalition to Defend Affirmative Action & Integration v Bd of State Canvassers*, 262 Mich App 395, 402; 686 NW2d 287 (2004).

14

provision introduces in some manner a change to the existing provision.  Rather, when the existing provision would likely continue to exist as it did preamendment, although it might be affected or supplemented in some fashion by the proposed amendment, no abrogation occurs.  On the other hand, a proposed amendment more likely renders an existing provision inoperative if the existing provision creates a mandatory requirement or uses language providing an exclusive power or authority because any change to such a provision would tend to negate the specifically conferred constitutional requirement.

*Massey* helps to illustrate this distinction.  Article 4, § 7 of the 1963 Michigan Constitution contains a list of qualifications for members of the Legislature.  Because that list did not purport to be exclusive, the term-limit amendment—which added an additional qualification to article 4, § 54 of the Michigan Constitution, limiting the length of time a legislator could serve—did not abrogate article 4, § 7 because the original qualifications remained fully in effect.  However, had the existing list of qualifications purported to be the exclusive list of qualifications, then the new qualification contained in article 4, § 54 *would* have abrogated the existing provision because it would have been impossible to harmonize the additional qualification with an exclusive list of qualifications, i.e., the two provisions would have been incompatible.  Thus, if the existing and new provisions can be harmonized, the amendment does not render the existing provision wholly inoperative.

This abrogation analysis requires consideration of not just the whole existing constitutional provision, but also the provision's discrete subparts, sentences, clauses, or even, potentially, single words.  If the proposed amendment renders wholly inoperative any one of those discrete components, then the petition must republish the entire

15

provision. For example, if a proposed constitutional amendment sought to reduce the age of eligibility to become a Michigan senator or representative, article 4, § 7, would have to be republished because the existing age-eligibility requirement, 21 years of age, is a discrete constitutional mandate even though it is included in a sentence that contains several additional eligibility requirements. In contrast, the term-limit amendment considered in *Massey* created no direct conflict with the specific eligibility requirements but merely added an additional one.

## III. APPLICATION

### A. COLLECTIVE-BARGAINING AMENDMENT—DOCKET NO. 145748

Citizens Protecting Michigan's Constitution (CPMC), which opposes the collective-bargaining initiative, alleges that the proposed amendment will alter or abrogate article 4, §§ 48 and 49 of the 1963 Michigan Constitution. The proposed amendment would neither alter nor abrogate either of those sections. First, the proposed amendment would leave the current text of both sections completely intact. Even if a proposed amendment's new provision specifically refers to or quotes an existing constitutional power and then proceeds to limit that power, as the proposed collective-bargaining amendment does with § 49, there would be no alteration of the existing provision because the text of the existing provision itself would remain unchanged. Thus, it would not alter the existing provisions.

Likewise, the proposed amendment would not abrogate either existing section in question because neither would be rendered a nullity. Section 49 provides that "[t]he legislature *may* enact laws relative to the hours and conditions of employment." Similarly, § 48 provides that "[t]he legislature *may* enact laws providing for the

16

resolution of disputes concerning public employees, except those in the state classified civil service." CPMC alleges that these sections are abrogated by the Protect Our Jobs proposal, which declares that "[n]o existing or future law of the state or its political subdivisions shall abridge, impair or limit" the collective-bargaining rights secured by other portions of the proposed amendment. But CPMC misapprehends the meaning of abrogation in the context of the established petition law of this state. Under the existing constitutional language, the legislative power is broad, but it is neither absolute nor exclusive. Neither section suggests that this power cannot be limited or affected by other provisions of the Constitution. Therefore, the Legislature may still enact the laws provided for in §§ 48 and 49, but should the amendment pass, the power to do so could be limited by collective-bargaining agreements. Because the Legislature retains the same nonexclusive grant of power, neither section would be rendered wholly inoperative.

## B.  BRIDGE AMENDMENT—DOCKET NO. 145755

Taxpayers Against Monopolies (TAM) opposes the amendment proposed by The People Should Decide (TPSD). TAM argues that the TPSD proposal would alter or abrogate three sections of the Constitution. Again, we respectfully disagree.

TAM argues that the new proposed constitutional provision would alter or abrogate article 2, § 9 of the 1963 Michigan Constitution, which provides the procedures for voting on an initiative or referendum, because it incorporates the procedures of article 2, § 9 by reference but then modifies those procedures when exercised with regard to votes on international bridge projects. The text of article 2, § 9 would remain untouched if the amendment passes, and thus no alteration would occur. Furthermore, the substance

17

of article 2, § 9 would be completely unchanged by the proposal. It would be neither negated nor rendered inoperative, so no abrogation would occur.

TAM next argues that TPSD's amendment would alter or abrogate article 3, § 6 of the 1963 Michigan Constitution, governing the state's interest in internal improvements, because TPSD chose to situate its proposed amendment as article 3, § 6a. Importantly, TPSD has not proposed modifying § 6 itself. Instead, it has proposed a wholly new section that, in TPSD's view, is best located in Michigan's constitutional scheme between § 6 and § 7 of article 3. Because it would be a new section of the Constitution, there would be no alteration of the text of any existing provision. The mere fact that the proponents of the amendment chose to situate a new section between two existing sections of the Constitution would not, by itself, alter the existing sections. Furthermore, there would be no abrogation because § 6 remains fully operative.

Lastly, TAM argues that the proposal would alter or abrogate article 7, § 16 of the 1963 Michigan Constitution, which provides the Legislature with the nonexclusive authority to provide for various infrastructure projects. Here again, there would be no alteration because the text of the existing provision would be unaffected by the proposed amendment. There would also be no abrogation. The relevant text of article 7, § 16 reads:

> The legislature *may* provide for the laying out, construction, improvement and maintenance of highways, bridges, culverts and airports by the state and by the counties and townships thereof; and *may* authorize counties to take charge and control of any highway within their limits for such purposes. The legislature *may* provide the powers and duties of counties in relation to highways, bridges, culverts and airports; *may* provide for county road commissioners to be appointed or elected, with powers and duties provided by law. [Emphasis added.]

18

Each grant of power in this section is open-ended; no specific or discreet grant is made. The Legislature may still provide for any project as before, though the scope of this nonexclusive power might be limited by the proposed amendment requiring a popular vote before construction of a bridge. So clearly the power would not be rendered wholly inoperative.

C. TWO-THIRDS VOTE TO RAISE TAXES AMENDMENT—DOCKET NO. 145753

Defend Michigan Democracy (DMD) is challenging the amendment proposed by Michigan Alliance for Prosperity (MAP). DMD argues that MAP's proposal requiring a ⅔ vote in the Legislature to effectuate a tax increase would alter or abrogate several existing sections. Like TPSD, MAP styled its proposed amendment as a number and letter combination, specifically article 9, § 26a. Again, this would not be an alteration or abrogation of article 9, § 26 of the 1963 Michigan Constitution. Instead, it is a proposal that places the proposed amendment in a particular, chosen place in the Constitution, and in doing so takes advantage of terms and definitions that apply only to a certain range of sections. However, it would neither alter nor abrogate § 26. Therefore, the petition did not need to republish § 26.

Additionally, MAP was not required to republish article 9, § 3 of the 1963 Michigan Constitution, which calls for a ¾ vote to increase ad valorem taxes for school operation. That section would not be altered because its text would suffer no deletion, addition, or change. Furthermore, § 3 would not be abrogated because it would remain fully operative. Article 9, § 3 established a *minimum* vote requirement for an increase in ad valorem taxes. That minimum would remain operative and could be harmonized with the new amendment, especially given that the proposed amendment expressly leaves

19

existing, more burdensome hurdles in place. Any vote that satisfies the ¾ requirement will necessarily satisfy the ⅔ requirement. Therefore, this section will not be abrogated if the amendment is adopted.

Similar logic applies to DMD's argument that MAP was required to republish article 9, § 6 of the 1963 Michigan Constitution. This section of the Constitution states, in part, that property taxes may be increased "if approved by a majority of the electors, qualified under Section 6 of Article II of this constitution, voting on the question." This section applies to local millages, not state taxes, but even if it were to be affected by the proposed amendment, it did not need to be republished. The text would be untouched by the amendment so there would be no alteration. There would also be no abrogation because the procedures in § 6 do not purport to be exclusive. That the proposed amendment would require the vote by the electors to be in November would not abrogate § 6; it would merely add a more specific requirement to the existing procedure. Likewise, the addition of a second means to raise these taxes (by a ⅔ vote of the Legislature) is permissible without republication when the existing provision did not purport to be the exclusive procedure.

DMD's argument that the proposed amendment will alter or abrogate article 9, §§ 1 and 2 of the 1963 Michigan Constitution, is without merit. Section 1 empowers the Legislature to impose taxes, and § 2 states that the power shall not be "surrendered, suspended or contracted away." The text of both sections would remain unchanged and, therefore, unaltered. The proposed amendment would abrogate neither section because both sections would continue to empower the Legislature in the same manner as before the passage of the amendment. The Legislature's *power* would not be negated; the

proposed amendment would simply require a larger majority to *exercise* that power. DMD further argues that these sections would be abrogated by allowing a majority of the electors to enact or raise taxes, which had previously been the exclusive province of the Legislature. But contrary to DMD's assertion, the Legislature has never held this power to the exclusion of the people. Indeed, article 2, § 9 of the 1963 Michigan Constitution has always reserved to the people the power to enact any law the Legislature could enact, including a tax. Logically, when the people have already reserved to themselves the broad power to enact laws coextensive with the power of the Legislature, the assertion of that power cannot be deemed an abrogation.

## D. CASINO AMENDMENT—DOCKET NO. 145754

Protect MI Constitution argues that the Citizens for More Michigan Jobs (CFMMJ) proposal will alter or abrogate article 4, § 40 of the 1963 Michigan Constitution. This section states in part:

> Except as prohibited by this section, (t)he legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise *complete* control of the alcoholic beverage traffic within this state, including the retail sales thereof. [Emphasis added.]

The proposed amendment would not alter § 40 because it would not add to, subtract from, or change the text of § 40.

However, the proposed amendment would abrogate § 40. The proposed amendment states in part:

> All of the casinos authorized by this section *shall* be granted liquor licenses issued by the state of Michigan to serve alcoholic beverages on the premises. [Emphasis added.]

21

It is undisputed that part of the Liquor Control Commission's "*complete* control of the alcoholic beverage traffic within this state, including the retail sales thereof" entails the granting of liquor licenses.[31]  Furthermore, § 40 expressly states that the commission's control is "complete."  Because complete control necessarily communicates the exclusivity of control, *any* infringement on that control abrogates that exclusivity; an amendment that contemplates anything less than complete control logically renders that power in § 40 inoperative.  The proposed section would nullify the "complete" control currently established by the Constitution by taking specific decisions whether to grant or deny a liquor license to the newly established casinos out of the "control" of the commission.[32]  Because the proposed amendment would abrogate article 4, § 40, republication of that section on the petition was necessary to comply with the republication requirement of MCL 168.482(3).  The failure to do so is fatal to the proposed amendment, and we must therefore deny mandamus.

## IV.  CONCLUSION

In concluding, we reiterate our holdings so that the people will hereafter know with all the certainty and precision that is reasonably possible what is required to properly petition to amend the Constitution:

---

[31] Const 1963, art 4, § 40 (emphasis added).

[32] Even though the amendment affects only a small fraction of the power to control alcoholic beverage traffic, which power itself is only a portion of Const 1963, art 4, § 40, a provision of § 40 has been negated and, thus, abrogated, thereby requiring republication of the entire constitutional section.  At oral argument on this application, even CFMMJ's counsel conceded that the proposed amendment would erode the exclusive and total control of the commission, thereby constituting an abrogation of § 40.

22

1.  When the existing language of a constitutional provision would be altered or abrogated by the proposed amendment, republication of the existing provision is required.

2.  The language of the amendment itself, rather than how proponents or opponents of the amendment characterize its meaning, controls whether an existing provision would be altered or abrogated by the proposed amendment.

3.  When the existing language of a constitutional provision would not be altered, but the proposed amendment would render the entire provision or some discrete component of the provision wholly inoperative, abrogation would occur and republication of the existing language is required.

4.  When the existing language would not be altered or abrogated, but the proposed amendment would only have an effect on the existing language, and the new and existing provisions can be harmoniously construed, republication of the existing provision is not required.

5.  When the existing language would not be altered or abrogated, but the proposed amendment would only have an effect on the existing language, thereby requiring that the new and existing provisions be interpreted together, republication of the existing provision is not required.

Accordingly, in *Protect Our Jobs* we affirm the judgment of the Court of Appeals granting relief on the complaint for mandamus. In *Michigan Alliance for Prosperity* and *The People Should Decide*, we grant relief on the complaints for mandamus in part, and direct the Board of State Canvassers, the Secretary of State, and the Director of Elections to proceed as necessary to place the proposed constitutional amendments on the

23

November 2012 election ballot.  We deny relief in all other respects.  In *Citizens for More Michigan Jobs* we dismiss the complaint for mandamus filed in the Court of Appeals and deny relief in all other respects.

Pursuant to MCR 7.317(C)(3), we direct the Clerk of the Court to issue the judgment orders forthwith.  No motion for rehearing will be entertained.

Brian K. Zahra
Robert P. Young, Jr.
Stephen J. Markman
Mary Beth Kelly

STATE OF MICHIGAN

SUPREME COURT

PROTECT OUR JOBS,

        Plaintiff-Appellee,

v

No. 145748

BOARD OF STATE CANVASSERS and
DIRECTOR OF ELECTIONS,

        Defendants-Appellees,
and

CITIZENS PROTECTING MICHIGAN'S
CONSTITUTION,

        Intervening Defendant-
        Appellant.

---

MICHIGAN ALLIANCE FOR
PROSPERITY,

        Plaintiff-Appellant,

v

No. 145753

BOARD OF STATE CANVASSERS,
DIRECTOR OF ELECTIONS, and
SECRETARY OF STATE,

        Defendants-Appellees,
and

DEFEND MICHIGAN DEMOCRACY,

        Intervenor.

---

CITIZENS FOR MORE MICHIGAN JOBS
and ROBERT J. CANNON,

       Plaintiffs-Appellants,

v                                    No. 145754

SECRETARY OF STATE, BOARD OF
STATE CANVASSERS, and DIRECTOR
OF ELECTIONS,

       Defendants-Appellees
and

PROTECT MI CONSTITUTION,

       Intervenor.

_____

THE PEOPLE SHOULD DECIDE,

       Plaintiff-Appellant,

v                                    No. 145755

BOARD OF STATE CANVASSERS,
DIRECTOR OF ELECTIONS, and
SECRETARY OF STATE,

       Defendants-Appellees,

and

TAXPAYERS AGAINST MONOPOLIES,

       Intervenor.

_____

MARILYN KELLY, J. (*concurring in part and dissenting in part*).

      I concur with the result reached in *Protect Our Jobs v Board of State Canvassers*

(Docket No. 145748), *Michigan Alliance for Prosperity v Board of State Canvassers*

(Docket No. 145753), and *The People Should Decide v Board of State Canvassers* (Docket No. 145755). But I respectfully dissent from the result reached in *Citizens for More Michigan Jobs v Secretary of State* (Docket No. 145754).

The proposed constitutional amendment involved in *Citizens for More Michigan Jobs* neither alters nor abrogates article 4, § 40 of the state Constitution.[1] Because that section would not be altered or abrogated, there is no need for the petition to satisfy the republication requirement.[2] Accordingly, I would grant mandamus and direct the Board of State Canvassers, the Secretary of State, and the Director of Elections to take the steps necessary to place the proposed amendment on the November 2012 general election ballot.

The law governing this case is clear and was established long ago. If a proposed amendment would directly abrogate existing language in our Constitution, the existing language must appear on the petition. Thirty-two years ago, this Court held that a constitutional provision will be abrogated if a proposed amendment would render the provision "wholly inoperative."[3] For an existing provision to be wholly inoperative, the

---

[1] Const 1963, art 4, § 40.

[2] See Const 1963, art 12, § 2.

[3] *Ferency v Secretary of State*, 409 Mich 569, 597; 297 NW2d 544 (1980).

3

provision would have to be rendered a nullity[4] or it would have to be impossible to harmonize it with the proposed amendment.

Article 4, § 40 of our Constitution states that the Legislature "may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof."[5] The majority reasons that the proposed constitutional amendment would abrogate the "complete control" language of this provision because it would grant liquor licenses to eight new casinos.[6] The majority posits that

> [b]ecause complete control necessarily communicates the exclusivity of control, *any* infringement on that control abrogates that exclusivity . . . . The proposed section would nullify the "complete" control currently established by the Constitution by taking specific decisions whether to grant or deny a liquor license to the newly established casinos out of the "control" of the commission.[7]

This reasoning is flawed. If § 40 is read in its entirety, it becomes apparent that the "complete control" of the Liquor Control Commission (LCC) is neither complete nor exclusive. Rather, it is subject to limits that the Legislature chooses to place on it.[8]

---

[4] See *Massey v Secretary of State*, 457 Mich 410, 418; 579 NW2d 862 (1998); *Coalition to Defend Affirmative Action & Integration v Bd of State Canvassers*, 262 Mich App 395, 402; 686 NW2d 287 (2004).

[5] Const 1963, art 4, § 40.

[6] The proposed amendment states, in part, that "[a]ll of the casinos authorized by this section shall be granted liquor licenses issued by the state of Michigan to serve alcoholic beverages on the premises."

[7] *Ante* at 22.

[8] Const 1963, art 4, § 40; *Scott v Arcada Twp Bd*, 268 Mich 170, 173; 255 NW 752 (1934) (quotation marks omitted), overruled on other grounds by *Bundo v City of Walled*

4

If the Legislature may subject the LCC's control to limitations, then so may the people of this state. The people have an inherent and superior right to amend the Constitution and to alter the authority of the legislatively created LCC.[9] Should the voters pass the proposed constitutional amendment, it would be controlling by its nature, irrespective of whatever authority the Legislature has bestowed on the LCC. Moreover, because the LCC's "complete control" is subject to limitation both by statute and by the people, a constitutional amendment affecting that control cannot render the language of § 40 a nullity. Therefore, the proposed amendment cannot abrogate it.

Clearly, constitutional language limits the control of the LCC over alcoholic-beverage traffic in the state. Even if one were to pretend that it does not, the Court must give effect to the intent of the people in adopting constitutional provisions.[10] Therefore, should one conclude that the proposed amendment, if adopted, would collide with article 4, § 40, the Court is obliged to seek a construction that harmonizes the two. And in this case, harmonization is perfectly possible.

The proposed constitutional amendment would create eight new casinos. It is within the authority of the people to create the casinos and require the LCC to issue a

---

*Lake*, 395 Mich 679, 702-703 (1976) ("The control conferred upon the liquor control commission under the constitutional proviso is subject to statutory limitations.").

[9] Citizens can petition for a constitutional amendment in accordance with the requirements of Const 1963, art 12, § 2.

[10] "It is a maxim that the object of construction [of constitutional language], is to ultimately ascertain and give effect to the intent of the people in adopting it." *Sch Dist of City of Pontiac v City of Pontiac*, 262 Mich 338, 346; 247 NW 474 (1933).

5

liquor license to each of them. The authority of the LCC to decide whether to issue liquor licenses is qualified by statute and by the people. Hence, the existing constitutional provision and the proposed constitutional amendment may be read in harmony to give effect to the intent of the people if the people pass the amendment.

It should be noted, moreover, that the proposed constitutional amendment does not grant a perpetual liquor license to each casino. It merely states that the casinos "shall be granted liquor licenses . . . ." The licenses would be subject to the liquor laws enforced by the LCC through the control that the Legislature has granted it.[11]

For all these reasons, I would allow the proposed amendment in *Citizens for More Michigan Jobs* to go to a vote of the people.

Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway

___

[11] See MCL 436.1103 *et seq.*

6